# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 07-2757

BRANDIE ATKINS, as personal representative of
William Atkins, deceased,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 6109—**Milton I. Shadur**, *Judge.*

ARGUED SEPTEMBER 25, 2008—DECIDED NOVEMBER 10, 2008

Before POSNER, FLAUM, and EVANS, *Circuit Judges.*

POSNER, *Circuit Judge.* This appeal from the dismissal of a civil rights suit under 42 U.S.C. § 1983 requires us to interpret Rule 25(a) of the Federal Rules of Civil Procedure, which governs the substitution of a party who has died. The rule was revised last year, after the district court proceedings relating to this appeal, so our references will be to the unamended rule. The committee note states that the changes made by the amended rule are only stylistic.

The rule provides that if the claim on which the suit is based survives the death (some claims, such as claims of defamation, die with the claimant), the court may order the substitution of the proper party, ordinarily the personal representative of the party who has died. But the suit must be dismissed if the motion for substitution is filed more than 90 days "after the death is suggested upon the record by service of a statement of the fact of death." Fed. R. Civ. P. 25(a)(1). The rule provides that service on the parties must be in accordance with the procedure for service set forth in Rule 5, see *Russell v. City of Milwaukee*, 338 F.3d 662, 665-67 (7th Cir. 2003), and on nonparties "in the manner provided by Rule 4 for the service of a summons," but the rule does not set forth any criteria for determining which nonparties must be served. The committee note to the 1963 amendment to the rule explains that the 90-day deadline for making the motion may be extended pursuant to Rule 6(b) but also that if the motion for an extension of time is made long after death the judge may deny it.

In October 2003 Chicago police stopped a car driven by Adam Atkins. His brother William Atkins was a passenger. The police released Adam but arrested William on the basis of a parole-violation warrant bearing his name and his Illinois Department of Corrections identification number. He was held at the police station overnight and then transferred to the custody of the Department of Corrections, which placed him in the state prison at Joliet. From the moment of his arrest William Atkins steadfastly denied that he was the William Atkins named in the warrant. He was released from the

Department's custody after 37 days. He brought this suit against the arresting officers, prison guards, and others, mainly contending that the Department lacks proper procedures for determining mistaken identification, but also claiming that his arrest was illegal and that he was mistreated while at Joliet.

Although he complained about the misidentification to guards and other staff at Joliet, he did not ask to contact a lawyer, or seek to challenge his confinement as he could have done by petitioning for habeas corpus under state law, 735 ILCS 5/10-101 *et seq.*; if he struck out he could then (since his federal constitutional rights had arguably been violated) ask for federal habeas corpus. 28 U.S.C. § 2241(c)(3). The availability of judicial remedies for a mistaken incarceration is important because prisons would be rendered unmanageable if, as the plaintiff contends, prison guards and miscellaneous prison staff have a constitutional duty, even when there are adequate formal remedies against unjustified imprisonment, to investigate a prisoner's claim of misidentification. As the Supreme Court said in *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979), "Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. The

ultimate determination of such claims of innocence is placed in the hands of the judge and the jury." And so in *Hernandez v. Sheahan*, 455 F.3d 772, 777 (7th Cir. 2006), we rejected "the rule that [the plaintiff] wants the Sheriff to follow, under which every deputy must be open to persuasion for as long as a person is in custody." We pointed out that such a rule "would create a substantial possibility that by presenting his contention over and over even a guilty suspect would eventually find a deputy who did not understand the weight of the evidence and let him go. That would frustrate the public interest in carrying out the criminal law." *Id.*

The suit was filed in October 2005. Both Atkins brothers were named as plaintiffs, though Adam was complaining only about the stop. Both were represented by the same lawyer, Joseph Longo. The suit was proceeding through its pretrial stages when on December 9, 2006, Longo filed with the court a document captioned "Plaintiff's Motion to Substitute Because of Death." This strange document reads in its entirety: "Sadly, one of the plaintiffs, William O. Atkins, in his 30s has recently died tragically. The plaintiff will need to open an estate for him, so that his wife can continue the lawsuit on his behalf. Federal Rules of Civil Procedure 25(a). The plaintiff filed this motion to keep the Honorable Judge Shadur [the district judge presiding over this case] informed of the plaintiff's death." The referent of "plaintiff" is apparently the deceased William Atkins, though he had ceased, upon his death, to be a party.

The district judge denied the motion. No estate had been opened and no personal representative of the dece-

dent had been appointed. A motion for substitution may be filed only by a party, by the executor or administrator of the decedent's estate, or, if the estate has already been distributed to the heirs, by them. See Fed. R. Civ. P. 25(a)(1). The decedent's lawyer may not file such a motion in his own name because he no longer has a client, but for obvious practical reasons he is permitted to file a motion for an extension of time if there is no executor because the decedent died without a will and an administrator of the estate has not yet been named. *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1297 (7th Cir. 1993); *Unicorn Tales, Inc. v. Banerjee*, 138 F.3d 467, 470 (2d Cir. 1998); 6 *Moore's Federal Practice* § 25.12[1] (3d ed. 2008).

On March 28, 2007, the 90-day deadline for filing a motion for substitution on account of death expired. Deeming the motion filed by Longo a suggestion of death within the meaning of Rule 25(a)(1), one of the defendants moved to dismiss the suit. The judge gave Longo till April 26 to substitute a proper party for William Atkins. The day before this deadline expired, Longo filed a petition in an Illinois state court on behalf of Atkins's wife, Brandie Atkins, to open an estate for the decedent, and filed in the district court a motion to substitute the wife as plaintiff. But it was not until May 7 that the Illinois court in which William Atkins's estate was being probated actually appointed Brandie as the personal representative of her husband's estate.

When a motion for an extension of time in a federal civil case is filed after the expiration of a deadline, the judge must determine whether the failure to meet the

deadline was "because of excusable neglect." Fed. R. Civ. P. 6(b)(2). Longo's failure to ask for an extension of the 90-day deadline within the 90 days was inexcusable, as in *Russell v. City of Milwaukee, supra*, 338 F.3d at 667-68. Longo argues, and we accept, that Mrs. Atkins was too upset by her husband's death (he was murdered), and the disordered state of his possessions when he died, to petition promptly to open an estate. But there was nothing to prevent Longo from bringing the problem to the district court's attention in a motion for an extension of time for filing the motion for substitution.

Longo argues that he couldn't file anything during this period because he had not been retained by Mrs. Atkins. But that had not prevented him from filing the motion to substitute her back in December. He wanted to keep the suit alive and expected to represent Mrs. Atkins in it, and that intent and expectation entitled him to file a motion for an extension of time required to keep the case alive.

He further argues that his (improper) motion for substitution filed in December 2006 was not a valid suggestion of death to start the 90-day clock ticking because it was not authorized by the now-deceased plaintiff, his client. (Actually Longo had and has a live client, Adam Atkins, whose case remains pending in the district court. It is because the order dismissing William Atkins's case was entered as a final judgment under Rule 54(b) that we have appellate jurisdiction.) That is a ridiculous argument; a suggestion of death cannot be authorized by the person who has died, at least not without the intervention of a medium.

Another unpersuasive reason for thinking the December motion ineffective is that Rule 25(a)(1) requires that the suggestion of death be noted "on the record." The Wright and Miller treatise says that once a party dies, his attorney has no authority to add anything to the record, 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 1955 (3d ed. 2007), implying that Longo should have notified the defendants' lawyer of Atkins's death and that that lawyer would then have filed the suggestion of death with the court. The point strikes us as fussy, as well as inconsistent with the accepted proposition that the decedent's lawyer can ask for an extension of time, the request for which will be "on the record" even though he has no client when he makes the request.

But in fact the December motion did not start the 90-day clock ticking because it was not served on Mrs. Atkins. Rule 25(a)(1) requires service, though it does not say which nonparties must be served (Mrs. Atkins was a nonparty)—obviously not every person in the United States who happens not to be a party to the lawsuit in question. But nonparties with a significant financial interest in the case, namely the decedent's successors (if his estate has been distributed) or personal representative (it has not been), should certainly be served. *Barlow v. Ground*, 39 F.3d 231, 233-34 (9th Cir. 1994); *Grandbouche v. Lovell*, 913 F.2d 835, 837 (10th Cir. 1990) (per curiam); *Fariss v. Lynchburg Foundry*, 769 F.2d 958, 962 (4th Cir. 1985). And Mrs. Atkins was one of those nonparties, in fact (it appears) the nonparty with the biggest stake in the continuation of the case.

Service on her would have been especially important had an opposing party, to start the 90-day clock, filed the suggestion of death, as in *Fariss v. Lynchburg Foundry*, *supra*, 769 F.2d at 961; see 6 *Moore's Federal Practice*, *supra*, § 25.12[1]. The December 2006 motion was filed on her behalf, and obviously she knew that her husband had died and there is no suggestion that in seeking to sub-stitute her for her husband as plaintiff (for remember that that is what the motion asked) Longo was acting without her authorization. He was William Atkins's lawyer and presumably would continue his representa-tion of the plaintiff in the suit when the widow was substituted. He asked that she be substituted (and there is no suggestion that she demurred) and he filed the petition to open an estate for William Atkins with her as the administrator.

All this said, the cases are unequivocal that an obviously interested nonparty, such as Mrs. Atkins, must be served for the 90-day clock to start running. Besides the *Grandbrouche* and *Fariss* cases, see *Bass v. Attardi*, 868 F.2d 45, 50 n. 12 (3d Cir. 1989); *Rende v. Kay*, 415 F.2d 983 (D.C. Cir. 1969); *Inglis v. Buena Vista University*, 235 F. Supp. 2d 1009, 1029-30 (N.D. Iowa 2002); *Kasting v. American Family Mutual Ins. Co.*, 196 F.R.D. 595, 599-601 (D. Kan. 2000). It is true that *George v. United States*, 208 F.R.D. 29, 32 (D. Conn. 2001), holds that if the suggestion of death is filed by the opposing party, that party is not required to serve a successor or representative if he doesn't know who that is, and so the 90-day period starts to run from the filing of the suggestion. The other side can protect itself by telling the moving party who the

successor or representative is, and if necessary filing a motion for an extension of time for filing a motion to substitute that person for the decedent. *George* has no application to this case, however, because the suggestion of death was filed by the decedent's lawyer.

The case law makes clear that with the inapplicable exception noted in *George*, notice to the lawyers, service on the lawyers, knowledge of all concerned—nothing will suffice to start the 90-day clock running except service on whoever is identified as the decedent's representative or successor. The rule is of greatest importance in cases such as *Fariss* in which it is the opposing party that has filed the suggestion of death, but insistence on service even when the decedent's lawyer is the person making the suggestion makes a certain amount of sense; it protects the nonparty from finding himself (in this case herself) in a situation in which a lawyer for someone else (the decedent) has thrust him into a case that he would rather not be in, or at least not as the client of this lawyer. See *Barlow v. Ground, supra,* 39 F.3d at 233-34; cf. *Fariss v. Lynchburg Foundry, supra,* 769 F.2d at 962-63.

The December 2006 motion was thus a nullity; the start gun for the 90-day race has not been fired. Attorney Longo confused matters terribly, but the defendants are at fault as well. As soon as they were notified of William Atkins's death they should have filed a suggestion of death with the court and served it on Atkins's widow; for Longo's December motion, we recall, indicated that she would be appointed her husband's personal representative to carry on the suit.

The dismissal of Brandie Atkins is reversed with instructions to reinstate her as a plaintiff.