NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 31, 2016[*]
Decided June 1, 2016

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 15-2855

| | |
|---|---|
| LARRY EUGENE LATHAM, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of |
| | Indiana, Indianapolis Division. |
| *v.* | |
| | No. 1:14-cv-607-SEB-DML |
| MICHAEL MITCHEFF and | |
| WILLIAM WOLFE, | Sara Evans Barker, |
| *Defendants-Appellees*. | *Judge*. |

**O R D E R**

Larry Latham, an Indiana prisoner at Pendleton Correctional Facility, brought this action under 42 U.S.C. § 1983 after the defendants, prison physicians William Wolfe and Michael Mitcheff, did not immediately meet his demand to see a cardiologist and also briefly delayed prescribing a medication recommended by one of the cardiologists who eventually treated him. (Rose Vaisvilas, a healthcare administrator for the

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

Department of Corrections, also was named as a defendant, but she died while the case was pending in the district court, and Latham made no effort to substitute an estate representative after being notified of her death. *See* FED. R. CIV. P. 25(a)(1); *Atkins v. City of Chicago*, 547 F.3d 869, 870 (7th Cir. 2008); *Steffey v. Orman*, 461 F.3d 1218, 1220 n.2 (10th Cir. 2006).) Latham claimed that the doctors had been deliberately indifferent to his heart disease in violation of the Eighth Amendment. The district court granted summary judgment for the doctors, and Latham appeals. We affirm the judgment.

The pertinent facts are not in dispute, and we recount them in the light most favorable to Latham, as the opponent of summary judgment. *See Dewitt v. Corizon, Inc.*, 760 F.3d 654, 655–56 (7th Cir. 2014). Latham, who is now 62 years old, had suffered multiple heart attacks and twice had heart surgery before going to prison in 1997. He also has a family history of heart problems (his mother had heart disease, and four siblings had heart attacks). Dr. Wolfe treated Latham's heart disease in Pendleton's chronic care clinic 11 times from 2010 through 2013. He prescribed nitroglycerin to treat Latham's chest pain, a blood thinner, and medications to lower his cholesterol. Dr. Wolfe also monitored Latham's condition with routine blood tests, which Latham refused on one occasion.

When Latham had an appointment with Dr. Wolfe, he generally reported that his medication regimen was succeeding in keeping his episodes of chest pain to a minimum, and that the nitroglycerin would relieve the pain that he did experience. When Latham reported periodic left-side numbness that lasted a few minutes in June 2010, Dr. Wolfe responded by ordering more blood work, prescribing an additional medication for his diabetes, increasing his blood glucose monitoring, and discussing with Latham the importance of taking his medications.

Over time Latham became increasingly insistent that he should see a cardiologist, but then in August 2011 he refused his appointment with Dr. Wolfe because he did not want to wait for the doctor during clinic hours. Other medical staff saw Latham during the next several months, but Dr. Wolfe again took charge in August 2012 when Latham temporarily experienced greater chest pain. Dr. Wolfe ordered aspirin, another over-the-counter pain medication, and an EKG, which showed normal results. Dr. Wolfe met with Latham and explained that the EKG results were consistent with previous results.

Latham returned to the health unit in October 2012 complaining that the nitroglycerin was not controlling his chest pain. This time an EKG showed abnormal results, and infirmary staff sent Latham to a local hospital, where doctors performed a

heart catheterization to examine the blockages in his arteries and then placed a stent to treat narrowing in his left coronary artery. After the stent placement, Dr. Mitcheff, the medical director for the private company that provides healthcare in Indiana prisons, authorized a referral to a cardiologist. The cardiologist concluded that Latham's heart disease was stable and suggested increasing the dosage of one of his medications for chest pain to better manage his symptoms. Dr. Wolfe followed this recommendation. Six months later, in June 2013, Latham had his final appointment with Dr. Wolfe, who was leaving his job, Latham complained of increased chest pain, so Dr. Wolfe ordered another EKG and more blood work. Two months later Latham complained to a guard about chest pain but refused to go to the health unit.

After this Latham was treated by a different physician. When Latham's chest pain increased in November 2013, the new physician recommended another cardiology consultation, which Dr. Mitcheff approved. The new cardiologist recommended adding another medication for chest pain to Latham's regimen, but Dr. Mitcheff was suspicious that Latham had not been taking his current medication properly. Dr. Mitcheff suggested to the prison physician that he should change Latham's prescriptions from "keep on person" to "direct observation therapy" before adding the new medication. When Latham's symptoms had not improved a few weeks after this change, Dr. Mitcheff authorized a prescription for the new medication.

At summary judgment the two doctors argued that Latham simply disagreed with their treatment decisions and that, contrary to Latham's assertion that poor treatment by Dr. Wolfe had resulted in emergency surgery to insert the stent, the evidence shows that Dr. Wolfe routinely monitored his heart condition and acted promptly when he reported increased chest pain. Dr. Wolfe had prescribed medication to reduce the risk of blockage in his arteries, and Dr. Mitcheff, again contrary to Latham's allegations, had approved sending Latham to a cardiologist. And, the defendants argued, Dr. Mitcheff's suggestion to change the delivery method of Latham's medications for chest pain before adding an additional drug was an acceptable exercise of medical judgment, not deliberate indifference. In response Latham argued that, as neither Dr. Wolfe nor Dr. Mitcheff were heart specialists, they were unqualified to treat his heart condition and should have brought in a specialist when he continued to have chest pains. The district court agreed with the doctors that Latham had not presented evidence from which a jury reasonably could find deliberate indifference. The only conclusion to be drawn from the evidence, the court reasoned, is that Dr. Wolfe and Dr. Mitcheff had exercised medical judgment in treating Latham's heart disease.

On appeal Latham reasserts that Dr. Wolfe and Dr. Mitcheff were deliberately indifferent, but he does not point to evidence that could create a triable issue of fact. *See* FED. R. CIV. P. 56(c), (e); *Knight v. Wiseman*, 590 F.3d 458, 463–64 (7th Cir. 2009). He introduced no evidence that his condition required intervention by a specialist before his hospitalization and the stent placement. *See Pyles v. Fahim*, 771 F.3d 403, 411–12 (7th Cir. 2014); *Jackson v. Kotter*, 541 F.3d 688, 697–98 (7th Cir. 2008). Before that Dr. Wolfe had been routinely monitoring his symptoms and prescribing appropriate medications. And Dr. Mitcheff never denied a request for a cardiology referral after Latham's condition required a specialist's input. As for Dr. Mitcheff's suggestion that a switch to "direct observation therapy" should be made before introducing another medication for Latham's chest pain, Latham does not point to any evidence suggesting that that Dr. Mitcheff had failed to exercise medical judgment. *See Holloway v. Delaware Cty. Sheriff,* 700 F.3d 1063, 1073–75 (7th Cir. 2012); *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006).

Latham's two remaining arguments are equally meritless. First, Latham argues that the grant of summary judgment deprived him of his Seventh Amendment right to a jury trial. But where there are no disputes of material fact, as here, a grant of summary judgment is consistent with the Seventh Amendment. *See Hanners v. Trent*, 674 F.3d 683, 691 n.12 (7th Cir. 2012); *BMG Music v. Gonzalez*, 430 F.3d 888, 892–93 (7th Cir. 2005). Second, Latham says that the district court denied his "right to call witnesses to testify on his behalf" because it did not issue subpoenas for his written depositions. Latham is incorrect on the facts; there was no denial by the district court. His request was granted with the explanation that he would have to pay the cost of making a recording and the court sent him blank subpoena forms. Latham then withdrew his request because he could not pay and said that he would submit additional interrogatories instead.

                                                                                                    AFFIRMED.