16-4191(L)
Kotler v. Jubert, et al.

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2020
Nos. 16-4191(L) and 17-1755(Con)

KERRY KOTLER,
*Plaintiff-Appellant*,

*v.*

L. JUBERT, DEPUTY SUPERINTENDENT OF SECURITY, W. DANN,
CORRECTION SERGEANT, DARWIN DAILY, CORRECTIONS OFFICER,
DAVID CHARLAND, CORRECTIONS OFFICER,
*Defendants-Appellees*,

JOHN DONELLI, SUPERINTENDENT, BARE HILL CORRECTIONAL
FACILITY, LINDA TURNER, DEPUTY SUPERINTENDENT OF PROGRAMS,
THOMAS EAGEN, DIRECTOR, INMATE GRIEVANCE PROGRAMS, DONALD
SELSKY, DIRECTOR, SPECIAL HOUSING/INMATE DISCIPLINE,
*Defendants*.

Appeal from the United States District Court for the
Northern District of New York
No. 06-cv-1308 — Frederick J. Scullin, Jr., *Judge*.

ARGUED: SEPTEMBER 30, 2020
DECIDED: JANUARY 19, 2021

Before: POOLER, LOHIER, and NARDINI, *Circuit Judges*.

---

This case — now on its third trip to our Court — arises from retaliation and due process claims brought by plaintiff-appellant Kerry Kotler, a former inmate at Bare Hill Correctional Facility, against multiple prison officials. Since our last remand, the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., *J.*), dismissed the action against one defendant following his death, dismissed Kotler's due process claim as having been abandoned in a previous appeal, and held a jury trial on Kotler's retaliation claims, resulting in a verdict for the defendants. Kotler appeals from the court's December 5, 2016, entry of judgment and May 18, 2017, denial of his motion for judgment as a matter of law or, in the alternative, a new trial, arguing that the court's pretrial decisions were improper and that he was denied a fair trial. We **AFFIRM IN PART**, **VACATE IN PART**, and **REMAND** the case for trial on Kotler's due process claim.

---

TOR TARANTOLA and JORDAN ALSTON-HARMON, Yale Law School Appellate Litigation Project (Alexis Zhang, Yale Law School Appellate Litigation Project, Tadhg Dooley and Benjamin M. Daniels, Wiggin & Dana LLP, *on the brief*), New Haven, CT, *for Plaintiff-Appellant.*

JONATHAN D. HITSOUS, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, and Jeffrey W. Lang, Deputy Solicitor General, *on the brief*), *for* Letitia

James, Attorney General of the State of New York, Albany, NY, *for Defendants-Appellees*.

WILLIAM J. NARDINI, *Circuit Judge*:

Plaintiff-Appellant Kerry Kotler, a former inmate at the Bare Hill Correctional Facility in Malone, New York, sued prison officials on the theory that they planted a weapon in his housing area in retaliation for his outspoken activity on an inmate grievance committee. He also alleged that the officials violated his due process rights in a disciplinary hearing over the incident. Kotler claimed that, by setting him up and then denying him a fair hearing, officials violated his rights under the First and Fourteenth Amendments. Over the years, the case has twice bounced between the United States District Court for the Northern District of New York (Norman A. Mordue, *J.*, and Frederick J. Scullin, Jr., *J.*) and our Court. Since our last remand, the district court dismissed Kotler's due process claim, finding that Kotler abandoned it in his prior appeals, and dismissed the alleged linchpin defendant, now-deceased Superintendent John Donelli, finding that no one

timely moved for substitution of Donelli's successor or representative after his death. The court held a three-day trial on Kotler's retaliation claims in November and December 2016. The jury returned a verdict for the defense.

On appeal, Kotler challenges the district court's pretrial dismissal of Superintendent Donelli as a defendant. He also seeks a retrial on his retaliation claims, arguing that the district court prevented him from presenting the jury with his theory of the case, and that the court improperly answered a jury question during deliberations. Finally, Kotler seeks a trial on his due process claim, contending that the claim's dismissal before trial was improper.

We agree with the district court's dismissal of Superintendent Donelli and write to explain that under Rule 25(a) of the Federal Rules of Civil Procedure, the 90-day deadline for a plaintiff to move to substitute a defendant is triggered by service of a notice on the plaintiff of the defendant's death, regardless of whether that notice was also served upon the decedent's successor or representative. Moreover, we find no grounds

to vacate the jury verdict on retaliation. But we conclude that Kotler did not abandon his due process claim during his previous appeals, and so the district court erred in dismissing it. Accordingly, the judgment is affirmed in part and vacated in part, and the case is remanded solely for trial on Kotler's due process claim.

## I.    BACKGROUND

### A.    Factual History

Kotler was an elected inmate representative on the Bare Hill Correctional Facility grievance committee when, on November 1, 2003, a corrections officer found a shank in his housing cube and detained him pending disciplinary proceedings. Kotler alleges that the defendants planted the weapon in retaliation for his work on the grievance committee. Then-Superintendent John Donelli was frustrated with Kotler's conduct and had recently learned that a Tier III disciplinary rule violation — such as possession of a weapon — would compel Kotler's dismissal as a representative. Kotler intended to defend himself at his disciplinary hearing

5

and submitted a list of witnesses, some of whom he claimed were complicit in the alleged set-up. Superintendent Donelli then appointed one of those requested witnesses, Deputy Superintendent of Security Lee Jubert, to preside over Kotler's disciplinary hearing. Deputy Superintendent Jubert found Kotler guilty of weapon possession and ordered his three-year suspension from the committee.

## B. Procedural History

On October 27, 2006, Kotler filed this action pursuant to 42 U.S.C. § 1983, alleging violations of his First and Fourteenth Amendment rights for the alleged retaliation, and violations of his Fourteenth Amendment due process rights during his disciplinary hearing.[1]

---

[1] Kotler originally brought due process claims against Deputy Superintendent Jubert and Director of Special Housing and Inmate Discipline Donald Selsky. The case against Director Selsky was dismissed by stipulation. Accordingly, only the due process claim against Deputy Superintendent Jubert remains at issue.

6

This case has visited our Court twice before.[2] In its first iteration, the district court (Norman A. Mordue, *J.*) granted the defendants' motion for summary judgment, holding that there was no evidence that the weapon had been planted, and thus no reasonable basis on which a jury could have found retaliation. The court also dismissed Kotler's due process claims, finding that they were defeated by the defendants' evidence that the discipline was not retaliatory. Kotler filed a notice of appeal "from each and every part of" the district court's decision. J. App'x at 76. This Court vacated that decision in *Kotler I*, reasoning that there was "a genuine issue of fact as to whether one or more of the defendants retaliated against Kotler for his protected activities."[3] On remand, the district court granted the defendants' second motion for summary judgment on the basis of collateral estoppel, premised on the outcome of Kotler's prison disciplinary hearing

---

[2] *See Kotler v. Donelli*, 382 F. App'x 56 (2d Cir. 2010) ("*Kotler I*"); *Kotler v. Donelli*, 528 F. App'x 10 (2d Cir. 2013) ("*Kotler II*").

[3] 382 F. App'x at 58.

7

and a subsequent Article 78 proceeding in New York Supreme Court. The court ruled that Kotler could not relitigate his claim — rejected by the state court — that the weapon had been planted by prison officials. In *Kotler II*, we again vacated the district court's decision, holding that "Kotler did not have a full and fair opportunity to litigate [his claims] in the [disciplinary hearing and Article 78 proceeding] and he should have a chance now to present all of the evidence to a jury."[4]

As the parties prepared for trial, Superintendent Donelli died. On August 21, 2013, the Assistant Attorney General ("AAG") representing the other defendants served Kotler with a statement of death. The notice stated that Superintendent Donelli would be dismissed from the case "unless a motion for substitution is made not later than 90 days after" service of the notice. J. App'x at 198. On November 22, 2013, Magistrate Judge David E. Peebles recommended Superintendent Donelli's dismissal from the lawsuit

---

[4] 528 F. App'x at 14.

under Federal Rule of Civil Procedure 25, because no one had moved for substitution within 90 days of service of the statement of death.[5] Kotler objected to the recommendation, arguing that the statement of death was deficient because it did not provide the executor's name or contact information, and that the AAG should have assisted him in identifying the executor of the Donelli estate. The district court adopted the magistrate judge's Report and Recommendation and dismissed all claims against Superintendent Donelli.[6]

The case went to trial on November 30, 2016, by which time it had been reassigned to District Judge Frederick J. Scullin, Jr.[7] At the final pretrial conference two days prior, the district court orally dismissed as abandoned Kotler's due process claim against Deputy Superintendent Jubert. It

---

[5] *See Kotler v. Donelli*, No. 9:06-CV-1308, 2013 WL 6799320, at *2 (N.D.N.Y. Dec. 20, 2013) (adopting Magistrate Judge Peebles's Report and Recommendation).

[6] *Id.* at *1.

[7] The case was reassigned to Judge Scullin on March 1, 2016.

explained that the court had previously granted summary judgment for the defendants on all of Kotler's claims, and concluded that Kotler had appealed only the court's First Amendment retaliation decision. It also found that this Court's previous orders "only explained the standard for a First Amendment retaliation claim" and "framed the issue" solely as a question of retaliation.[8] Accordingly, Kotler was permitted a trial only on his retaliation claims.

Trial lasted three days. Kotler presented his case *pro se* with standby counsel present. He called four witnesses, read two unavailable witnesses' deposition testimonies into the record, and testified himself. The defendants called one witness. At the end of the third day of trial, after retiring to deliberate, the jury sent a note asking two questions: whether there were video cameras in Kotler's housing cube, and whether an inmate

---

[8] The district court provided this explanation in its decision on Kotler's motion for judgment as a matter of law or, in the alternative, for a new trial. *See Kotler v. Jubert*, No. 9:06-CV-1308, 2017 WL 2210267, at *6 (N.D.N.Y. May 18, 2017).

10

is allowed to ask why he is being detained. Discussing the first question with the court, Deputy Superintendent Jubert said there were no video cameras, and Kotler said, "That's correct." J. App'x at 998. As to the second question, the court stated that it assumed the answer was yes, to which defense counsel agreed, and Kotler said nothing. The court asked the parties whether it could send its response to the jury in writing; again, the defense lawyers agreed, and Kotler did not respond. In a post-trial filing, Kotler claimed that he later registered an objection to the courtroom deputy, but the transcript shows that he never raised the issue to the court itself during the trial — either before or after the court recessed.

Shortly thereafter, the jury returned a verdict for the defendants. The court entered judgment on December 5, 2016. Kotler later filed a written motion for judgment as a matter of law or, in the alternative, for a new trial, which the district court denied.[9] Kotler timely appealed from the judgment and order.

---

[9] *Id*. at *7.

**II. Discussion**

Kotler argues that the district court improperly dismissed the action against Superintendent Donelli, and did not give a fair trial on the retaliation claims by making several prejudicial comments in front of the jury and improperly answering a jury question. He also argues that the court erroneously dismissed his due process claim as abandoned on a prior appeal. For the reasons that follow, we agree with the district court's dismissal of Superintendent Donelli, and we find no reason to vacate the jury's verdict on retaliation. Nevertheless, we hold that the district court erred in concluding that Kotler abandoned his due process claim. We therefore affirm the judgment with respect to the retaliation claim, but vacate the district court's dismissal of the due process claim and remand for trial on that claim.

## A. Superintendent Donelli's dismissal was proper.

We first consider whether the district court properly dismissed the action against Superintendent Donelli after his death.[10] We reject Kotler's argument that, under Federal Rule of Civil Procedure 25, the 90-day window to substitute Superintendent Donelli's estate had not yet run because the AAG did not serve the estate's executor with a statement of death. Instead, we hold that the 90-day limit began running for Kotler when the AAG properly served Kotler with a statement of death.

Rule 25 tells courts what to do when a party to a lawsuit dies. Rule 25(a) states in relevant part:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made *within 90 days after service of a statement noting the death*, the action by or against the decedent must be dismissed.

___

[10] We review the district court's legal interpretation of Rule 25 *de novo* and factual findings for clear error. *Unicorn Tales, Inc. v. Banerjee*, 138 F.3d 467, 469 (2d Cir. 1998).

. . .

> A motion to substitute, together with a notice of hearing, must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4. *A statement noting death must be served in the same manner.*[11]

We have looked at Rule 25 before. In *Unicorn Tales, Inc. v. Banerjee*, we held that a "party is given 90 days from the time when it learns from compliance with Rule 25(a)(1) of the death of an opposing party" to move for substitution, and that the clock starts running for the served party regardless of whether the notice identifies the decedent's legal representative or successor.[12] We rejected the notion that a notice of death cannot be filed until after a representative for the decedent's estate has been appointed, as well as the argument that a failure to identify the decedent's legal representative places an unfair burden on the opposing party to identify and locate the representative.[13] True, we did not reach the precise

---

[11] Fed. R. Civ. P. 25(a)(1), (3) (emphases added).

[12] 138 F.3d at 470.

[13] *Id*. (declining to follow *Rende v. Kay*, 415 F.2d 983, 986 (D.C. Cir. 1969)).

question at issue in this case — whether the notice of death has to be served on the deceased's legal representative to trigger the 90-day substitution period for parties who have been properly served. But it necessarily follows from *Unicorn Tales* that if a statement of death need not even *identify* the representative — and indeed, that a representative need not even *exist* at the time of service — for the 90-day clock to start running for the served party, then it certainly is not required that the statement be *served* on that representative.

Kotler argues that other courts of appeals have held that Rule 25(a) requires service of the statement of death on both the parties of record and the decedent's nonparty representative to trigger the 90-day substitution period as to anyone. But a majority of these cases from our sister circuits feature a deceased plaintiff's legal representative who, having *never* received service of a notice of death, attempts to revive the deceased

15

plaintiff's dismissed lawsuit. [14] A recurring theme of those cases is the perceived need to "alert[] the nonparty to the consequences of death for a pending suit, signaling the need for action to preserve the claim if so desired."[15] We have no occasion to opine on the validity of those cases, where the non-party later seeking substitution did not, in fact, receive service under Rule 25(a). They do not feature the scenario we consider here: a party who actually received notice (properly served under Rule 25(a)) and sat on his hands while the 90-day window lapsed. Recall that, in *Unicorn Tales*, we held that a "party is given 90 days *from the time when it learns from*

---

[14] *See Sampson v. ASC Indus.*, 780 F.3d 679, 682-83 (5th Cir. 2015) (deceased plaintiff's personal representative attempting to revive case because she did not receive personal service of the statement of death); *Atkins v. City of Chicago*, 547 F.3d 869, 873 (7th Cir. 2008) (same); *Barlow v. Ground*, 39 F.3d 231, 233-34 (9th Cir. 1994) (same); *Grandbouche v. Lovell*, 913 F.2d 835, 837 (10th Cir. 1990) (same); *Fariss v. Lynchburg Foundry*, 769 F.2d 958, 962 (4th Cir. 1985) (same). *But see Bass v. Attardi*, 868 F.2d 45, 50 n.12 (3d Cir. 1989) (statement of death must be served on *defendant* decedents' successors before 90-day window is triggered).

[15] *Farris*, 769 F.2d at 962; *see also Barlow*, 39 F.3d at 233; *Atkins*, 547 F.3d at 874.

*compliance with Rule 25(a)(1)* of the death of an opposing party to take appropriate action."[16]

To the extent that some courts have held more broadly that a statement of death must be served not only on all relevant parties but also on a decedent's nonparty successor or representative to trigger the 90-day substitution period *even for the served parties*, we cannot agree. This interpretation of the Rule finds its roots in the D.C. Circuit's 1969 decision in *Rende v. Kay*.[17] There, defense counsel moved for dismissal of a deceased defendant before a legal representative was appointed for the estate.[18] The court rejected counsel's motion as a "tactical maneuver," held that a statement noting death should identify the estate's representative, and reasoned that it was unfair to "place on plaintiff the burden, where no conventional representative was appointed for the estate in probate court,

---

[16] 138 F.3d at 470 (emphasis added).

[17] 415 F.2d 983.

[18] *Id*. at 984.

17

of instituting machinery in order to produce some representative of the estate ad litem."[19]  *Rende* therefore held that a statement of death must, at a minimum, identify the successor or representative of the estate, who may then be substituted for the decedent.[20]  In what is arguably dicta, the Third Circuit has gone even farther, suggesting that a statement of a defendant's death must not only identify the deceased's legal representative, but also be served on that representative.[21]

The first problem with Kotler's reliance on the *Rende* line of cases is that their interpretation of Rule 25 is fundamentally inconsistent with our holding in *Unicorn Tales*.  In fact, we respectfully rejected *Rende*'s holding in

---

[19]  *Id*. at 986.

[20]  *Id.*  The Ninth Circuit recently adopted this holding.  *See Gilmore v. Lockard*, 936 F.3d 857, 867 (9th Cir. 2019) ("[W]e require, at a minimum, identification of [a decedent]'s successor or personal representative.").

[21]  *See Bass*, 868 F.2d at 50 n.12 (describing statement of death as "deficient" because it "was not served on the decedents' successors or representatives").

our decision then, and other courts have since returned the favor.[22] But even if we were writing on a clean slate, we see nothing in the language of Rule 25 that imposes a service or identification requirement beyond the requirement that "the statement of death be served on the involved parties."[23] The Rule merely says that a statement noting death "must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4," and that a motion for substitution of the decedent must be made "within 90 days after service of a statement noting the death."[24] We read this language simply as establishing the acceptable mode of service on nonparties, which then triggers the commencement of the 90-day clock with respect to the served entity. As we explained in *Unicorn Tales*, the purpose of Rule 25 is "to prevent a situation in which a case is dismissed because a

---

[22] *See Unicorn Tales*, 138 F.3d at 470; *see also Gilmore*, 936 F.3d at 866 (describing *Rende* as "better reasoned").

[23] *Unicorn Tales*, 138 F.3d at 470.

[24] Fed. R. Civ. P. 25(a)(1), (3).

party never learned of the death of an opposing party."[25]  The AAG served Kotler with a statement noting the death of Superintendent Donelli on August 21, 2013.  Kotler was therefore well aware of Superintendent Donelli's death and had 90 days to move for substitution, regardless of whether anyone else was served with the same notice.  Indeed, Kotler's alternative reading of Rule 25(a)(1) — that the 90-day clock does not start running as to anyone until every party *and* the decedent's representative or successor have been served — could lead to strange results.  For example, if the notice of a defendant's death were properly served on the decedent's representative and all but one of, say, ten co-defendants (with service having been completed but technically defective as to the remaining co-defendant), Kotler's proposed rule would have us conclude that the 90-day window never opened for anyone, even those who had been properly served.

---

[25]  138 F.3d at 470.

To the extent Kotler complains that he was unable to identify Superintendent Donelli's legal representative within 90 days, we explained in *Unicorn Tales* that the solution lies in Rule 6(b) rather than Rule 25.[26] Rule 6(b) allows a litigant to seek permission to enlarge the time in which "an act may or must be done," and allows the court to extend a litigant's time for good cause.[27] That means that Kotler could have asked the district court for more time under Rule 6(b) to file his Rule 25 motion for substitution. After receiving an extension, he could have moved for limited discovery to identify the Donelli estate's executor or asked the court for assistance. Yet Kotler made none of these motions in the district court, and we therefore deem them waived.[28] Only after the 90-day window expired and the

---

[26] *See id.*

[27] Fed. R. Civ. P. 6(b). The court may extend time (A) "with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires"; or (B) "on motion made after the time has expired if the party failed to act because of excusable neglect." *Id.*

[28] *See Unicorn Tales*, 138 F.3d at 470 (citing *United States v. Margiotti*, 85 F.3d 100, 104 (2d Cir. 1996)).

21

magistrate judge recommended Superintendent Donelli's dismissal did Kotler raise any objections to the statement or ask for help identifying the estate's executor. He missed the deadline; it is too late to ask for an extension now.

In a last-ditch effort to save his case against Superintendent Donelli, Kotler argues that the court should have *sua sponte* granted him an extension of time because he was *pro se* when he received the statement of death. This Court has long accorded *pro se* litigants "special solicitude" to protect them from "inadvertent forfeiture of important rights because of their lack of legal training."[29] But solicitude for *pro se* litigants does not require us to excuse failure to comply with understandable procedural rules and mandatory deadlines.[30] Kotler never requested more time, and the district court was not required to mind deadlines for him.

---

[29] *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (quoting *Traguth v. Zuch*, 710 F.2d 90, 95 (2d Cir. 1983), and *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994)).

[30] *See Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d Cir. 2008) (holding that *pro se* litigants must comply with procedural rules).

In short, we hold that where, as here, a plaintiff is properly served a

statement of death for a defendant, the 90-day clock begins running under

Rule 25(a)(1) for the plaintiff to file a motion to substitute the decedent's

successor or representative. Because Kotler did not file a timely motion to

substitute, we affirm the district court's dismissal of Superintendent

Donelli.

**B.      The district court gave Kotler a fair trial on his retaliation claim.**

Kotler asks for a new retaliation trial under Rule 59, complaining of

the district court's conduct in front of the jury and in answering a jury

question.[31]  We hold that the district court gave Kotler a fair trial.

First, we consider the district court's conduct in front of the jury.

Kotler challenges several court colloquies and rulings, contending that the

court made prejudicial comments, asked questions that might have helped

---

[31] "We review a district court's denial of a Rule 59 motion for a new trial for abuse of discretion."  *Ali v. Kipp*, 891 F.3d 59, 64 (2d Cir. 2018).

resolve inconsistencies in a witness's testimony, and unfairly interrupted and restricted Kotler's examination of a key witness. We review evidentiary rulings for abuse of discretion.[32] It is a district court's duty to ask questions that "clarify and fully develop the relevant facts for the jury's elucidation," but the court should not convey to the jury its own "view about the merits of a party's claim."[33] "A court must strive for that atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding and must be especially cautious and circumspect in language and conduct during a jury trial."[34] Yet the question is "not whether the trial judge's conduct left something to be desired, but rather,

---

[32] *Arlio v. Lively*, 474 F.3d 46, 51 (2d Cir. 2007); *see also United States v. Quattrone*, 441 F.3d 153, 183 (2d Cir. 2006) ("The trial-management authority entrusted to district courts includes 'the discretion to place reasonable limits on the presentation of evidence.'" (citations omitted)).

[33] *Care Travel Co. v. Pan Am. World Airways, Inc.*, 944 F.2d 983, 992 (2d Cir. 1991); *Berkovich v. Hicks*, 922 F.2d 1018, 1025 (2d Cir. 1991).

[34] *Manganiello v. City of New York*, 612 F.3d 149, 169 (2d Cir. 2010) (internal quotation marks, citations, and ellipsis omitted).

in light of the record as a whole, whether the judge's behavior was so prejudicial that it denied a party a fair, as opposed to a perfect, trial."[35]

Here, the court's comments, questions, and evidentiary rulings did not deny Kotler a fair trial. To be sure, the court asked witnesses questions, limited Kotler's questioning of a witness, and told Kotler to hurry up numerous times. When placed in context of the entire record, the court's questions were attempts to clarify and organize information for the jury. Its rulings were attempts to manage the courtroom and prevent repetitive advocacy. And its nudges and comments were attempts to move the case along efficiently. The court did not communicate its thoughts on the case to the jury, act as advocate for the defendants, or otherwise prejudice Kotler. In fact, the court expressly instructed the jury not to draw any inferences from the court's rulings and comments:

> It is important for you to realize . . . that my rulings on evidentiary matters have nothing to do with the ultimate merits of the case and are not to be considered as points scored for one side or the other.

---

[35] *Id*. (internal quotation marks, citations, and alteration omitted).

25

> In addition, you must not infer from anything I have said during this trial that I hold any views for or against either Plaintiff or Defendants. In any event, any opinion I might have is irrelevant. You are the judges of the facts.

J. App'x at 220. We see no grounds for reversal based on the district court's behavior during trial.

Next, we turn to the court's response to a jury question. After retiring to deliberate, the jury submitted a written question to the court: "Is an inmate allowed to ask why they are being detained?" J. App'x at 1431. The district court made the note a court exhibit, read the question out loud to the parties in open court, proposed an answer, asked whether its answer was correct, and asked whether sending the answer in writing was agreeable. Hearing no objections, the court responded, "Yes, an inmate may ask why he/she is being detained."[36] J. App'x at 1432. Kotler contends

---

[36] We do not find error in the procedure adopted by the district court for handling the jury's inquiries. *See United States v. Collins*, 665 F.3d 454, 460 (2d Cir. 2012) (describing the process for answering jury questions). Although the better course is for trial judges to gain the affirmative consent of both parties to its proposed answer and then answer jury questions in open court, "allowing an opportunity to the jury to correct the inquiry or to

26

that the court did not give him a meaningful opportunity to object, and that the court's answer was incorrect and injected facts that were outside the trial record. We review for fundamental error — that is, an error in the jury instructions that is "so serious and flagarant that it goes to the very integrity of the trial"[37] — because Kotler had an opportunity to object to the court's proposed instruction and failed to do so. [38] Although the court's supplemental charge conference was undoubtedly brief, Kotler was present and on the record when the court raised the jury's question and proposed an answer. Indeed, Kotler had just responded to another proposed supplemental instruction.[39]

---

elaborate upon it," *id*. (citation omitted), the parties did not object to the court's decision to respond to these questions in writing.

[37] *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 49 (2d Cir. 2015).

[38] When "a party . . . fails to object to a jury instruction at trial" any challenge to that instruction is forfeited unless "the alleged errors are fundamental." *SCS Comms., Inc. v. Herrick Co.*, 360 F.3d 329, 343 (2d Cir. 2004) (internal quotation marks and citations omitted).

[39] Kotler contends that he objected to the courtroom deputy after the district judge left the bench. But a party must lodge an objection "on the record." Fed. R. Civ. P. 51(c)(1)

Here, we detect no fundamental error warranting vacatur. First, Kotler's complaint is essentially that the court's answer lacked nuance and should have also informed the jury of a New York prison regulation requiring inmates to "obey all orders of Department personnel promptly and without argument."[40] But as we have said before, "we will not upset a court's judgment" when the instructions were "at most incomplete."[41] Moreover, even assuming the court's instruction was incorrect or materially incomplete, any error did not undermine the integrity of the trial process.[42] Kotler presented his case over three days, telling the story of his role on the grievance committee, describing pushback he received from

---

(explaining that a party who objects to an instruction "must do so on the record, stating distinctly the matter objected to and the grounds for objection"). Kotler failed to do so, either before the judge recessed court or after he retook the bench.

[40] *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 270.2(B)(7)(i).

[41] *Densberger v. United Techs. Corp.*, 297 F.3d 66, 73 (2d Cir. 2002).

[42] *See Shade v. Hous. Auth. of City of New Haven*, 251 F.3d 307, 313 (2d Cir. 2001) (defining fundamental error) (citing *Modave v. Long Island Jewish Med. Ctr.*, 501 F.2d 1065, 1072 (2d Cir. 1974)).

certain prison administrators, and highlighting possible inconsistencies in the defendants' testimony. Viewing the trial record and jury "instructions as a whole,"[43] we find it unlikely that the court's answer to this question affected the very integrity of the trial. Kotler received a fair trial on his retaliation claims, and the court's supplemental jury instruction did not constitute fundamental error.

### C. Kotler did not abandon his due process claim.

Finally, we consider Kotler's due process claim. The district court's decision to dismiss Kotler's due process claim as abandoned was premised on the determination that it had previously granted summary judgment on the claim, that Kotler had not raised the claim in his appellate papers, and that this Court's prior orders focused solely on Kotler's retaliation claim.[44]

---

[43] *SCS Comms.*, 360 F.3d at 343 (quoting *Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.*, 290 F.3d 98, 115 (2d Cir. 2002)).

[44] As discussed above, the court explained the basis for its decision on the record at the final pretrial conference on November 28, 2016, and in its written decision on Kotler's motion for judgment as a matter of law or, in the alternative, for a new trial. *See Kotler v. Jubert*, 2017 WL 2210267, at *6.

We disagree. Because the district court's rejection of the due process claim was predicated entirely on its rejection of the retaliation claim; and because this Court subsequently vacated the court's judgments in their entirety without distinguishing among different claims, we conclude that Kotler's due process claim — like his retaliation claim — was revived after his earlier appeals.

In the usual course, it is the court of appeals — not the district court — that decides questions of appellate abandonment. We have not previously decided what standard of review applies to a district court's determination that a party abandoned a claim on appeal. A district court must, however, conduct proceedings on remand in a way that conforms to our mandate,[45] "look[ing] to both the specific dictates of the remand order as well as the broader spirit of the mandate" to determine what issues

---

[45] *See Havlish v. 650 Fifth Ave. Co.*, 934 F.3d 174, 181-82 (2d Cir. 2019) (describing the mandate rule).

remain open.[46]  We review *de novo* a district court's compliance with our

mandate.[47]

We hold that the district court erred when it dismissed Kotler's due

process claim as abandoned.  While Kotler's first appellate brief focused on

his retaliation claim — an understandable move in light of the district

court's fundamental finding of no retaliation — he nonetheless described

his claims as "interrelated," and, even more specifically, argued that his due

process claims "flowed from" the alleged retaliation.  J. App'x at 1501, 1504.

More to the point, our decision in *Kotler I* unambiguously vacated the entire

district court judgment.[48]  It did not vacate in part (as, for example, we do

today) on specified counts, or otherwise differentiate among the various

---

[46]  *Burrell v. United States*, 467 F.3d 160, 165 (2d Cir. 2006) (quoting *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001)) (internal quotation marks omitted).

[47]  *Puricelli v. Argentina*, 797 F.3d 213, 218 (2d Cir. 2015).

[48]  382 F. App'x at 58.

31

claims that Kotler raised. Nothing in our opinion suggested that any portion of the district court's judgment remained undisturbed.[49]

That our decision in *Kotler I* extended to all of Kotler's claims is reinforced by the fact that the district court had rejected the due process claim on the theory that it depended on the retaliation claim.[50] The district court had explained that Kotler's due process claim was "defeated by defendants' uncontradicted evidence that the discipline was not retaliatory and by plaintiff's failure to adduce any evidence of a conspiracy, a 'set-up', bias, retaliation, or other wrongdoing by any defendant." J. App'x at 1591.

---

[49] It may very well be that we could have concluded in *Kotler I* that Kotler had abandoned his due process claim by insufficiently arguing that claim in his opening brief. Nonetheless, nothing in our decision indicates that we reached that conclusion. Our abandonment principles are "prudential, not jurisdictional," and we have discretion to consider abandoned arguments to avoid a manifest injustice. *Sniado v. Bank Austria AG*, 378 F.3d 210, 213 (2d Cir. 2004). And in any event, we have previously held that a plaintiff does not abandon a claim by failing to raise it in his opening brief when that claim is "necessarily dependent" on the appealed issues, "and w[as] treated as such by the [d]istrict [c]ourt." *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 708 n.1 (2d Cir. 2011).

[50] Our orders must be read to address all issues "decided 'either expressly or by necessary implication.'" *Doe v. N.Y.C. Dep't of Soc. Servs.*, 709 F.2d 782, 788 (2d Cir. 1983) (quoting *Munro v. Post*, 102 F.2d 686, 688 (2d Cir. 1939)).

We, by contrast, agreed with Kotler that there was "a genuine issue of fact as to whether one or more of the defendants retaliated against Kotler for his protected activities."[51] Although our brief analysis discussed only the retaliation issue, our conclusion necessarily undermined the district court's basis for rejecting the due process claim as well. Taking a holistic view of Kotler's first appeal — a reference to an interrelated due process claim in his opening brief, the district court's retaliation-dependent decision, and our unqualified remand order — Kotler's due process claim remained live.[52]

The defendants contend that the district court's dismissal of Kotler's due process claim, even if improper, was harmless. We agree — but only up to a point. The district court's erroneous dismissal of Kotler's due process claim did not render Kotler's retaliation trial unfair. Kotler claims

---

[51] *Kotler I*, 382 F. App'x at 58.

[52] Nothing in Kotler's second appeal, *Kotler II*, disturbs this conclusion. In *Kotler II*, this Court found that the disciplinary determination that the weapon belonged to Kotler did not collaterally estop him from proving that the prison officials planted the weapon. 528 F. App'x at 12-14. Again, our decision did not address Kotler's due process claim because the defendants' collateral estoppel challenge was directed at Kotler's retaliation claims — not his due process claim.

that evidence he would have sought to admit on his due process claim —

larger portions of the transcript of his disciplinary hearing and a line of

questions for Deputy Superintendent Jubert — would have given the jury a

fuller picture of his retaliation claims. But Kotler has not argued that the

district court erred in excluding this evidence with respect to his retaliation

case; he merely argues that he was forced to restructure his trial strategy. If

there had been additional evidence admissible only for the limited purpose

of proving his due process claim, the district court would have been obliged

to instruct the jury not to consider it with respect to his retaliation claim.

Kotler's argument therefore boils down to a request for spillover prejudice

— and no litigant is entitled to that. Accordingly, a new trial on his

retaliation claims is unnecessary.

We do not agree, however, that the district court's complete

elimination of one of Kotler's claims for relief was entirely harmless. To be

sure, Kotler's due process claim — by his own admission — was largely

based on the same basic set of facts as his retaliation claims. This substantial

overlap explains the district court's original dismissal of Kotler's due process claim after it resolved the retaliation question. But the overlap was not complete. "Due process requires that a prison disciplinary hearing be impartial."[53] It is certainly possible that a jury could have found that Kotler's hearing was not impartial — on the theory that the hearing officer was biased, provided unfair process, or otherwise — without finding a broader retaliatory conspiracy.[54] We of course intimate no view on the merits of Kotler's claim; that is a job for a jury.

Because the district court erred in concluding that Kotler abandoned his due process claim on appeal, and because that error was not harmless

---

[53] *Russell v. Selsky*, 35 F.3d 55, 59 (2d Cir. 1994).

[54] In his complaint, Kotler alleges that Deputy Superintendent Jubert violated his due process rights by "conspiring with the other Bare Hill defendants and serving as a biased hearing officer by dishonestly suppressing evidence of [his] innocence . . . and evidence in support of [his] defense that he was retaliated against for his grievance-related activities." J. App'x 48 at ¶ 90. The jury verdict of no retaliation makes his due process claim considerably narrower but does not necessarily rule it out.

with respect to that claim, we remand for trial on his due process claim against Deputy Superintendent Jubert.

## III.    Conclusion

In sum, we hold as follows:

1.  When a plaintiff is served a statement of the defendant's death in compliance with Rule 25(a) of the Federal Rules of Civil Procedure, his 90-day window for moving to substitute the defendant begins to run, regardless of whether the statement of death was also served on the decedent's successor or representative.  The district court did not err in dismissing Superintendent Donelli as a defendant because Kotler failed to move for substitution, or an extension of time to do so, within 90 days after he was served the notice of death.

2.  The district court gave Kotler a fair trial on his retaliation claims. The district court's comments, questions, and rulings in front of the jury were not prejudicial, and we find no fundamental error in the court's

response to a jury question. We therefore affirm the district court's judgment on the retaliation claim.

3. Kotler did not abandon his due process claim. In *Kotler I*, this Court vacated without qualification the district court's judgment, which included summary judgment for the defense on both the retaliation and due process claims. Because our vacatur applied to the entirety of the judgment, where the claims were interrelated, and where Kotler had argued that the due process claim flowed from the retaliation claim, we conclude that our decision revived all of Kotler's claims. Moreover, that error was not harmless as to the due process claim itself. We therefore vacate the district court's dismissal of the due process claim against Deputy Superintendent Jubert and remand solely for trial on that claim.

Accordingly, we **AFFIRM IN PART** and **VACATE IN PART** the district court's judgment of December 5, 2016, and its order of May 18, 2017, and **REMAND** solely for trial on Kotler's due process claim.