10-1048-cr
United States v. Collins

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2011

(Argued: September 9, 2011     Decided: January 9, 2012)

Docket No. 10-1048-cr

---

UNITED STATES OF AMERICA,

*Appellee*,

v.

JOSEPH P. COLLINS,

*Defendant-Appellant.*

---

Before:

CALABRESI, CHIN, and CARNEY, *Circuit Judges*.

Appeal from a March 17, 2010 judgment of the United States District Court for the Southern District of New York (Patterson, *J.*) convicting defendant-appellant of conspiracy, securities fraud, and wire fraud. Defendant-appellant contends, *inter alia*, that the trial court committed prejudicial error when it failed to disclose the contents of a jury note and engaged in an *ex parte* colloquy with a juror accused of attempting to barter his vote.

VACATED and REMANDED.

CHRISTOPHER L. GARCIA, Assistant United
    States Attorney (Justin S. Weddle,
    Assistant United States Attorney, *on
    the brief*), *for* Preet Bharara,
    United States Attorney for the
    Southern District of New York, New
    York, New York, *for Appellee.*

WILLIAM J. SCHWARTZ (Jonathan P. Bach, Jason
    M. Koral, Reed A. Smith, Kathleen E.
    Cassidy, *on the brief*), Cooley LLP,
    New York, New York, *for Defendant-
    Appellant.*

Barry A. Bohrer, Alexandra A.E. Shapiro,
    Marc E. Isserles, *for Amicus Curiae
    New York Council of Defense Lawyers.*

Jack C. Auspitz, LaShann M. DeArcy, Amy
    J. Phillips, Martin Sander Kaufman,
    *for Amicus Curiae Atlantic Legal
    Foundation.*

CHIN, *Circuit Judge*:

In this case, defendant-appellant Joseph P. Collins proceeded to trial on a fourteen-count indictment charging him with, *inter alia,* conspiracy, securities fraud, wire fraud, and bank fraud. After twenty-two days of testimony, the jury began deliberations. On the fifth day of deliberations, difficulties arose as two jurors were involved in a verbal altercation. The next day, the foreman sent a note to the court asserting that one juror had attempted to barter his vote and was refusing to deliberate. The court did not share the contents of the note with the parties or seek counsel's input before it conducted an *ex*

-2-

*parte* interview with the accused juror. During the interview, the court gave the juror what amounted to a supplemental instruction, emphasizing the importance of resolving the case. This sequence of events deprived Collins of his right to be present at every stage of the trial. Because the deprivation was not harmless, we vacate and remand for a new trial.

### BACKGROUND

By a superseding indictment dated December 4, 2008, the government charged Collins with conspiracy, securities fraud, wire fraud, bank fraud, and making false filings with the SEC.

Trial commenced May 13, 2009. Jury deliberations began July 1. On July 8, the fifth day of deliberations, the jury reported difficulty reaching a verdict, requesting guidance from the court. The court responded by note, stating, "You, not the judge, are the sole judges of the facts." (Ct. Ex. 41).

Later that afternoon, a Court Security Officer (the "CSO") heard a disruption in the jury room. When the CSO entered, one juror told him that another juror had physically threatened him. The court brought the jury into the courtroom and instructed them "to show respect for one

another" and to "[t]ry not to get heated." (Tr. 5351). The court dismissed the jury for the day while it decided, with counsel, on an instruction that would help the jury deliberate more productively.

The following morning, just before 10AM, the court received two additional notes from the jury. The first note was written by Juror 4, and read:

> I am writing to express my concern regarding the conduct of juror number 9 . . . . Although I appreciate your efforts to control the frequent insults I've endured, the threat of bodily harm brings this abuse to a whole new level. Specifically, in a loud and belligerent man[ne]r juror [9] threatened to "cut off your (my) finger." She made that statement twice. In the same tirade she stated, "I will have my husband take care of you." These threats were made yesterday afternoon July 8, 2009.
>
> Rest assured I will not allow such threats and intimidation [to] alter my vote when it comes to determ[in]ing a verdict in this case. I am concerned, how[ev]er, [that] hearing these threats may affect other jurors. Regardless, I believe this is not the proper way to deliberate and the Court should be made aware of this conduct.
>
> Please forward this note to the Court as soon as possible. Hopefully we can get some guidance on how to proceed and complete our assigned task.

(Ct. Ex. 45).

-4-

The second note was written by the foreman to the court:

> In regards to the earlier note I forwarded to your attention from Juror 4 . . . , it is my personal opinion that the altercation yesterday could be traced to both parties involved.  There ha[ve] also been conversations on numerous
>
> occassions [sic] regarding respectfulness on the part of Juror 4 . . . .
>
> I do not intend this note to reflect the opinion of the jurors on a whole, but thought it important to voice my personal opinion on yesterday's altercation.

(Ct. Ex. 46).

Both of these notes were disclosed to the parties and counsel and read into the record.

At 10:15AM the jury received a note that the court had drafted with counsel the night before.[1]

At 2:15PM that afternoon, the court received two additional notes from the jury.  The first requested trial exhibits and testimony.  This first note was read into the record.  The second note stated:

> This is sent as a private note from Juror #1.
>
> There's been some concern amongst some of the juror's [sic] regarding odd behavior on the part of Juror #4 . . . .  During deliberations on 7/2, [Juror 4] changed

---

[1]  Because of a miscommunication, this note was not delivered to the jury upon its arrival.

                    his vote on a charge, bringing a
                    unanimous decision.  However, [Juror 4]
                    then attempted to make his vote
                    contingent upon the room agreeing blindly
                    on a charge to be voted on later.  He
                    wanted to barter.

                    In my opinion, this is at the heart of
                    yesterday's altercation between juror's
                    [sic] 4 and [9].

                    To compound this issue, juror 4 has made
                    it clear he would prefer to be a hung
                    jury than do further evidence research.

                    As foreman, I am struggling to find ways
                    of dealing with these issues, and will
                    continue guiding the jury towards a
                    conclusion using your guidance from court
                    exhibit #44.

(Ct. Ex. 48) (the "Note").

        The district court did not read the Note into the

record, or otherwise inform counsel of its contents.

Instead, it simply stated that it had received the Note and

would be speaking privately with Juror 4.  The court did not

explain why it would be holding an *ex parte* conference with

Juror 4.  Defense counsel stated that he was "not

consenting" to the court's chosen course of action.  (Tr.

5409).

        The court proceeded to hold an *ex parte* conference

with Juror 4.[2]  During the conference, the court asked Juror

4 about the accusations leveled against him in the Note.

_____

        [2]     The court reporter transcribed the conference.

–6–

Before giving Juror 4 an opportunity to respond, the court told him that his alleged behavior was "not conducive to getting this matter resolved, and it is important to both parties that the matter be resolved. As you know, we have taken eight weeks or more, two months to get to this point." (Tr. 5411).

Juror 4 denied that he was refusing to deliberate, stating that he was deliberating "more than many others." (Tr. 5413). He also denied that he had engaged in vote bartering. He acknowledged that he had used the phrase "what if we" and "deal" in the same sentence, but maintained that the other jurors took his words out of context and he did not intend to barter. (Tr. 5415-16).

Several times in the course of the *ex parte* conference with the court, Juror 4 expressed his frustration at having to endure insults from other jurors during deliberations. "I don't think I signed up to endure being called a jerk, having my skin tone made fun of," he said. (Tr. 5413). The foreman had asked the other jurors to stop the insults, Juror 4 reported, "[b]ut the next day, instead of insults, it moved to physical threats." (Tr. 5414).

The court asked Juror 4 to "keep [his] respect for [the foreman], because . . . he's trying to do a good job." (Tr. 5415). Juror 4 agreed, but expressed concern that "a

deliberate attempt is being made to remove me because I don't vote with him."  (Id.).  The court responded, "No, you don't have to vote with anybody."  (Id.).

Later in the conference, the court again encouraged Juror 4 to work with the foreman, stating, "I don't think you should proceed on the assumption that he isn't trying to do a good job.  He is trying to do a good job."  (Tr. 5416).  But Juror 4 continued to express frustration:

> [M]any people don't agree with me.
> Because of that, I have been insulted and
> threatened.
>
> . . .
> I don't mind the insults.  I am a little
> concerned about when somebody is going to
> have their husband take care of me.
>
> . . .
>
> This is not the kind of thing that I
> should have to consider when I'm trying
> to decide on a vote on a verdict.
>
> Like I said to him, it is not going to
> change my vote.  If he thinks that's the
> way to do it, no, wrong.

(Tr. 5417).

The court told Juror 4 to "[k]eep an open mind" and then sent him back to the jury room.  (Tr. 5418).

After the *ex parte* conference, the court read the Note and the transcript of the conference to counsel on the record.  Defense counsel argued that the deliberative

process had been tainted and moved for a mistrial. The court denied the motion and decided to let deliberations proceed without further communication to the jury.

The following day, July 10, defense counsel requested that the court also interview Juror 9 to ameliorate any prejudice that may have resulted from singling out Juror 4. The court denied this request.

That afternoon, at 3:45PM, the jury sent the following note:

> Your Honor—
>
> While deliberations over the past three days have been productive, and we feel more comfortable that we each understand our fellow juror's [sic] reasoning for their decisions on the charges presented, we are still unable to come to a unanimous decision on all counts.
>
> There is a firm feeling among the majority of the jurors that further deliberation will not result in a unanimous decision.

(Ct. Ex. 62).

The court, after consulting with counsel, asked the jury to list the counts on which it had reached a verdict. The jury replied that it had reached a verdict on Counts One (conspiracy), Two (securities fraud), Three (securities fraud), Six (wire fraud), and Nine (wire fraud). The court, with consent of counsel, agreed to take a partial verdict. The court brought in the jury, and the foreman

reported a verdict of guilty on each of these five counts. The jury failed to reach a verdict on Counts Four, Five, Seven, Eight, and Ten through Fourteen.

Judgment was entered against Collins on March 24, 2010, convicting him of (1) conspiracy to commit securities fraud, wire fraud, bank fraud, and money laundering, to make false filings with the Securities and Exchange Commission ("SEC"), and to make material misstatements to auditors in violation of 18 U.S.C. § 371; (2) securities fraud in violation of 15 U.S.C. §§ 78j(b) & 78ff; and (3) wire fraud in violation of 18 U.S.C. § 1343. The district court sentenced Collins principally to seven years' imprisonment. He is on bail pending this appeal.

Collins argues that (1) he was deprived of his right to be present when the court initially failed to disclose the contents of the Note and conducted an *ex parte* conference with a single juror in response to the Note, (2) he was denied his right to counsel at a critical stage of the trial, (3) the court erred by making inconsistent rulings with regard to "lay" opinion testimony, and (4) the court erred when it denied his request to present expert testimony on the practice of corporate transactional law. Because we agree with Collins's first argument, we do not reach his remaining contentions.

DISCUSSION

A. *Applicable Law*

1) *The Right To Be Present*

A defendant in a criminal case has the right to be present at "every trial stage."  Fed. R. Crim. P. 43(a)(2); *see United States v. Canady*, 126 F.3d 352, 360 (2d Cir. 1997) (right to be present rooted in Sixth Amendment Confrontation Clause and Fifth Amendment Due Process clause).  "The right to be present has been extended to require that messages from a jury should be disclosed to counsel and that counsel should be afforded an opportunity to be heard before the trial judge responds."  *United States v. Mejia*, 356 F.3d 470, 474 (2d Cir. 2004) (internal quotation marks omitted); *see Rushen v. Spain*, 464 U.S. 114, 119 (1983) (when jury note "relates to some aspect of the trial, the trial judge generally should disclose the communication to counsel for all parties") (citing *Rogers v. United States*, 422 U.S. 35, 38-40 (1975)); *United States v. Schor*, 418 F.2d 26, 29-30 (2d Cir. 1969).

We have explained that the "proper practice" for handling jury inquiries is as follows:

> (1) the jury inquiry should be in writing; (2) the note should be marked as the court's exhibit and read into the record with counsel and defendant present; (3) counsel should have an opportunity to suggest a response, and

-11-

> the judge should inform counsel of the
> response to be given; and (4) on the
> recall of the jury, the trial judge
> should read the note into the record,
> allowing an opportunity to the jury to
> correct the inquiry or to elaborate upon
> it.

*Mejia*, 356 F.3d at 475; *accord United States v. Ronder*, 639 F.2d 931, 934 (2d Cir. 1981). Allowing counsel to be heard reduces the risk that the trial court will respond in a way that prejudices one side. *See Ronder*, 639 F.2d at 934.

In general, the trial court should not respond to a jury note in an *ex parte* manner. *Ex parte* communications are "pregnant with possibilities for error." *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 460 (1978). Specifically, *ex parte* communication between the judge and a member of the jury may unintentionally "drift" into a supplemental instruction, *id.* at 462, for which the defendant has a well-established right to be present, *Shields v. United States*, 273 U.S. 583, 588-89 (1927)("supplementary instructions . . . ought to be given either in the presence of counsel or after notice and an opportunity to be present"); *accord Rogers*, 422 U.S. at 38-39. Furthermore, "[u]nexpected questions or comments can generate unintended and misleading impressions of the judge's subjective personal views." *Gypsum*, 438 U.S. at 460.

*Gypsum* provides one example of an *ex parte* exchange between judge and juror that inadvertently resulted in a constitutional violation.  In *Gypsum*, the foreman requested a meeting with the trial judge to discuss the "condition" of the jury.  *Id.* at 431.  Counsel "reluctantly" consented to the meeting.  *Id.* at 432.  At the end of the meeting, the foreman said to the judge, "You are after a verdict one way or the other."  *Id.*  The judge responded, "Which way it goes doesn't make any difference to me."  *Id.*  The Supreme Court held that this exchange "amounted to a supplemental instruction" regarding "the jury's obligation to return a verdict."  *Id.* at 462.  The Court found the conversation particularly "troubling" in light of the fact that counsel was denied the opportunity to correct any prejudice that might have resulted from the exchange.  *Id.*

### 2)   *Harmless Error*

Not every violation of a defendant's right to be present will result in reversal.  Such a violation only requires reversal if it is not harmless.  *See United States v. Blackmon*, 839 F.2d 900, 915 (2d Cir. 1988); *Krische v. Smith*, 662 F.2d 177, 179 (2d Cir. 1981).  There is some conflicting authority regarding the standard of review applicable to the harmless error analysis.  In *United States v. Fontanez*, we stated that a violation of a defendant's

right to be present is not harmless if his "absence created 'any reasonable possibility of prejudice.'" 878 F.2d 33, 37-38 (2d Cir. 1989) (quoting *United States v. Toliver*, 541 F.2d 958, 965 (2d Cir. 1976)); *see Chapman v. California*, 386 U.S. 18, 23-24 (1967) ("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."). In other instances, however, we have analyzed this type of case under a more deferential standard: whether the court can say with "'fair assurance . . . that the judgment was not substantially swayed by the error.'" *See, e.g.*, *Krische*, 662 F.2d at 179 (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)); *Ronder*, 639 F.2d at 935 (citing *Schor*, 418 F.2d at 30). We need not decide today which is the appropriate standard. As discussed below, even under the more deferential "fair assurance" standard, the trial court's errors were not harmless.

**B.  *Application***

Two principal issues are presented:  first, whether Collins's right to be present at every stage of the trial was violated; and second, if so, whether the error was prejudicial.

-14-

**1)** *Was Collins Deprived of His Right To Be Present?*

We consider first the district court's failure to disclose the contents of the Note and second its *ex parte* colloquy with Juror 4.

**a)** *Initial Failure To Disclose The Note*

Here, Collins was deprived of his right to be present when the district court initially chose not to disclose the contents of the Note. The court received the Note at 2:15PM on July 9. At approximately 2:30PM, it informed counsel that it had received a note and that it would be speaking "privately" with Juror 4. The court did not reveal anything about the Note, or indicate why it was necessary to conduct a private interview with a single juror. It did not solicit alternative courses of action, and proceeded with the *ex parte* interview over the protestation of defense counsel.

In the face of accusations of vote bartering and other misconduct, the trial court understandably felt the need to deal with the issue expeditiously. And it is true, as the government points out, that "the emergency nature of a communication" may require the court to respond to a note before it has the opportunity to share the note with counsel and solicit counsel's input. *See Ronder*, 639 F.2d at 934. But the circumstances here were not so exigent as to justify

–15–

depriving defense counsel of an opportunity to be heard. The government maintains that the Note required the court's immediate attention because there was a risk that the jury would reach a poisoned verdict if the court did not react quickly. (Gov't Br. 100, 110). It is unlikely, however, that a verdict was imminent. Juror 4 was allegedly refusing to deliberate, and the alleged attempt to barter had taken place a week earlier. Even if there were cause for concern, the court could have instructed the jury to stop deliberating while it read the Note into the record and consulted counsel on how to proceed.

### b) *The Ex Parte Conference with Juror 4*

Part of the ensuing *ex parte* exchange between the court and Juror 4 further deprived Collins of his right to be present. Before the court allowed Juror 4 to respond to the allegations against him, the court stated that his alleged conduct was "not conducive to getting this matter resolved, and it is important to both parties that the matter be resolved." (Tr. 5411). This explicit emphasis on the importance of resolution amounted to a direct supplemental instruction. Indeed, such language is a staple of a modified *Allen* charge, delivered specifically to stress the importance of reaching a verdict. *See Allen v. United States*, 164 U.S. 492, 501 (1896); *Smalls v. Batista*, 191

-16-

F.3d 272, 275 n.1 (2d Cir. 1999) ("*Allen* charge reminds the jurors about the importance of obtaining a verdict"); *see also* 1 L. Sand et al., Modern Fed. Jury Instructions-Crim. Ch. 9-11. When a supplemental instruction is given *ex parte*, without first consulting counsel, it violates a defendant's right to be present. *See Rogers*, 422 U.S. at 38-39; *Shields*, 273 U.S. at 588-89.

To be sure, hindsight is 20/20. The difficulty of the circumstances the district court faced is not lost upon us. Indeed, this was a situation in which an able and experienced trial judge was trying in good faith to ease serious tensions in the jury room and deal with accusations of misconduct. Nonetheless, we conclude that the district court erred in not disclosing the contents of the Note to Collins and counsel before taking action and in engaging in an *ex parte* conversation with Juror 4.

### 2) *Did The Deprivation Constitute Harmless Error?*

We turn to the issue of prejudice. Because of the delicate nature of jury deliberations, even seemingly innocuous *ex parte* communications between the court and the jury can amount to reversible error. *See, e.g.*, *Mejia*, 356 F.3d at 473, 478 (court received note expressing deadlock and revealing vote count; court responded that jury should not reveal vote count, but did not provide further

-17-

instruction); *Krische*, 662 F.2d at 178 (jury reported deadlock; court dispatched court officer to the jury room, who advised the jury to continue deliberations because "it's not soon enough"). Where, as here, the *ex parte* communication involves a supplemental instruction to a single juror in a minority position, the potential for prejudice is particularly acute. *See United States v. Zabriskie*, 415 F.3d 1139, 1148 (10th Cir. 2005) (reversible error where court delivered private *Allen* charge to holdout juror); *United States v. Brown*, 426 F.3d 32, 39 (1st Cir. 2005) (discussing potential for prejudice if court were to single out one juror for questioning).

We cannot say, with "fair assurance," that the district court's errors in this case did not substantially affect the verdict. The court singled out a dissenting juror, and emphasized to him the importance of reaching a verdict. We cannot ignore the possibility that Juror 4 walked out of the *ex parte* conference with the impression that he should not stand in the way of a prompt resolution of the case. Had the court initially shared the Note with counsel and solicited counsel's input before responding, any mistaken impressions might have been avoided. *See Krische*, 662 F.2d at 180 (counsel's input "could have substantially affected the content of the message to the jurors"); *Ronder*,

639 F.2d at 934-35 ("Had the first note been discussed with counsel, the [unbalanced] phrases in the response . . . might well have been avoided . . . ."). Defense counsel might have requested that they be present during the interview, or at least urged the court to narrowly tailor its *ex parte* inquiry into the alleged misconduct and provide any additional instructions in open court to the entire jury.

The government implies that any supplemental instruction given to Juror 4 was balanced and non-prejudicial. It points out that the court specifically reminded Juror 4, "you don't have to vote with anybody." (Tr. 5415). This reminder, however, was an insufficient substitute for the more comprehensive cautions that usually accompany supplemental instructions. *See Ronder*, 639 F.2d at 933 (telling jury, "You have a right . . . to stand on your own independent conviction," not sufficient to balance out supplementary instruction on importance of reaching verdict); *see also United States v. Ruggiero*, 928 F.2d 1289, 1299 (2d Cir. 1991).[3]

---

[3] The traditional *Allen* charge emphasizes the importance of reaching a verdict, and encourages jurors to "listen, with a disposition to be convinced, to each other's arguments." 1 L. Sand et al., Modern Fed. Jury Instructions-Crim. Ch. 9-11. But it also cautions that (1) "under no circumstances must any juror yield his conscientious judgment," and (2) no juror should "ever

Furthermore, the district court's apparent failure to acknowledge Juror 4's complaints of harassment exacerbated the potential for prejudice in this case. In the course of the *ex parte* interview, Juror 4 expressed fear in light of Juror 9's threat to have her husband "take care of" him, and frustration at the repeated insults he was enduring from other jurors. He also conveyed to the court his belief that there was a concerted effort by the other jurors to remove him because he did not agree with the foreman's views. In response, the court simply urged Juror 4 to support the foreman who, in the court's words, was "trying to do a good job." (Tr. 5415-16). After the interview, the court made no inquiry into the alleged behavior of the other jurors and specifically refused defense counsel's request that it also interview Juror 9. By ignoring Juror 4's complaints and refusing to conduct a broader inquiry, the court might have given Juror 4 the impression that it was taking sides against him. Furthermore, it might have sent a signal to the rest of the jurors that the court condoned their behavior towards Juror 4.

_____

change [his or her] mind just because the other jurors see things differently, or just to get the case over with." *Id.*

The government argues that the district court's actions here were "virtually identical" to the district court's actions in *United States v. Chang An-Lo*, 851 F.2d 547 (2d Cir. 1988), where we found no reversible error. We disagree. *Chang An-Lo* is similar to this case in that the trial judge did not disclose the contents of a note alleging jury misconduct before conducting *ex parte* interviews with two jurors. *Id.* at 558. In that case, however, the trial judge limited the interviews to a factual inquiry, asked counsel afterwards if they had further suggestions, and offered counsel the opportunity to interview the jurors themselves. *Id.*; *see also United States v. Gagnon*, 470 U.S. 522, 523-24 (1985) (interview with juror narrowly tailored to address misconduct and juror's ability to be impartial; counsel present and permitted to question juror).

Finally, the government argues that Collins could not have been prejudiced by the district court's errors because the jury deliberated for a full day after the *ex parte* conference before it reached a verdict. (Gov't Br. at 114-15) (citing *United States v. Rodriguez*, 545 F.2d 829, 830-31 (2d Cir. 1976)). It points out that this Court's finding of prejudice in *Mejia* and *Krische* largely rested on the short time between the impermissible instruction and the verdict. *See* 356 F.3d at 477 (fifty minutes); 662 F.2d at 179-80 (one hour and twenty minutes).

We do not think the fact that the jury deliberated for one full day after the *ex parte* conference requires us to find harmless error. *See Gypsum*, 438 U.S. at 433, 469 (improper colloquy at 12PM, jury returned verdict the next morning); *United States v. Peters*, 349 F.3d 842, 845, 849 (5th Cir. 2003) (reversible error where jury returned verdict day after improper *ex parte* communication with foreman); *Smalls*, 191 F.3d at 281 (length of deliberation did not diminish coerciveness of supplemental charge). First, in measuring the risk of prejudice, we look at the circumstances as a whole, not just the extent of deliberation after the error. As discussed above, there was a heightened risk of prejudice in this case because the court conducted an extensive colloquy with a single juror -- facts that make it readily distinguishable from *Mejia*, *Krische*, and *Rodriquez*, where the court merely made a terse statement to the entire jury. Second, in the context of a highly complex fraud case involving fourteen counts,[4] one day of deliberations is not a significant amount of time. It is possible that the mere administration of voting on all fourteen counts took up a significant portion of that one-

[4] By contrast, *Mejia* involved one count (drug conspiracy), 356 F.3d at 470-71, *Krische* involved two (robbery), 662 F.2d at 177, and *Rodriguez* involved two (income tax evasion and filing a false tax return), 545 F.2d at 830.

-22-

day period. Third, that the foreman sent a note on July 10 reporting that deliberations had been "productive" does not support the conclusion that Juror 4 was not prejudiced. Indeed, the foreman had no insight into whether Juror 4 had come to agree with the other jurors independently, or whether he had been improperly influenced by his *ex parte* conversation with the court.

## CONCLUSION

For the reasons stated above, we cannot say with "fair assurance" that the judgment was not "substantially swayed" by the district court's errors in this case. *Kotteakos*, 328 U.S. at 765. Therefore, those errors were not harmless. Accordingly, the judgment of the district court is VACATED and the case is REMANDED for a new trial.