23-7032-cr
*United States v. Hines*

# United States Court of Appeals
## for the Second Circuit

August Term 2024

(Submitted: November 5, 2024        Decided: June 11, 2025)

Docket No. 23-7032-cr

_____

UNITED STATES OF AMERICA,

*Appellee*,

v.

WILLIAM HINES,

*Defendant-Appellant*.

_____

Before:

SACK, CARNEY, and BIANCO, *Circuit Judges*.

Defendant-Appellant William Hines appeals from the judgment entered by the United States District Court for the Northern District of New York (Mae A. D'Agostino, *Judge*), convicting him, pursuant to a guilty plea, on one count of receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A), (b)(1) ("Count One"); and two counts of possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2), based on child pornography found on his cellphone ("Count Two"), and on his laptop computer ("Count Three"). As part of his plea agreement, Hines reserved the right to challenge the district court's

denial of his motion to suppress evidence obtained from the search of his cellphone and any subsequent evidence derived from that search.

On appeal, Hines argues that his girlfriend, K.S., acted as an agent of the police when she used his password to unlock his cellphone, observed child pornography on that cellphone, and showed those images to a police officer at the police station, and thus, that the evidence obtained during that warrantless search violated his Fourth Amendment rights and should have been suppressed. Hines further contends that, because the probable cause in the subsequent application to obtain a search warrant for his cellphone, laptop, and other electronic devices was based on the initial allegedly unconstitutional search of his phone by the police officer who was present with K.S., the evidence obtained from the execution of that warrant also should have been suppressed.

As a threshold matter, we hold that when a defendant challenges a search conducted by a private party, the burden lies with the defendant to show that the search constituted governmental action implicating the Fourth Amendment—not with the government to show the absence of governmental action. Here, we conclude that the district court did not err in determining, after conducting an evidentiary hearing, that Hines failed to meet his burden of demonstrating that his girlfriend acted as a *de facto* government agent when she unlocked his cellphone and showed the images of child pornography to the police officer. Moreover, because that private search of his cellphone did not implicate the Fourth Amendment, the district court correctly determined that the use of evidence derived from that private search in a subsequent search warrant application does not provide a basis to suppress evidence obtained from devices searched pursuant to that warrant.

Accordingly, we **AFFIRM** the judgment of the district court.

<div style="margin-left:2em">

Jonathan S. Reiner, Assistant United States Attorney, Of Counsel *for* Carla B. Freedman, United States Attorney for the Northern District of New York, Albany, New York, *for Appellee*.

</div>

Julie A. Nociolo, E. Stewart Jones Hacker Murphy LLP, Troy, New York, *for Defendant-Appellant*.

JOSEPH F. BIANCO, *Circuit Judge*:

Defendant-Appellant William Hines appeals from the judgment entered by the United States District Court for the Northern District of New York (Mae A. D'Agostino, *Judge*), convicting him, pursuant to a guilty plea, on one count of receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A), (b)(1) ("Count One"); and two counts of possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2), based on child pornography found on his cellphone ("Count Two"), and on his laptop computer ("Count Three"). As part of his plea agreement, Hines reserved the right to challenge the district court's denial of his motion to suppress evidence obtained from the search of his cellphone and any evidence derived from that search.

On appeal, Hines argues that his girlfriend, K.S., acted as an agent of the police when she used his password to unlock his cellphone, observed child pornography on that cellphone, and showed those images to a police officer at the police station, and thus, that the evidence obtained during that warrantless search was used to convict him in violation of his Fourth Amendment rights and should

have been suppressed. Hines further contends that, because the probable cause statement in the subsequent application to obtain a search warrant for his cellphone, laptop, and other electronic devices was based on the initial allegedly unconstitutional search of his phone by the police officer who was present with K.S., the evidence obtained from the execution of that warrant also should have been suppressed.

As a threshold matter, we hold that when a defendant challenges a search conducted by a private party, the burden lies with the defendant to show that the search constituted governmental action implicating the Fourth Amendment—not with the government to show the absence of governmental action. Here, we conclude that the district court did not err in determining, after conducting an evidentiary hearing, that Hines failed to meet his burden of demonstrating that his girlfriend acted as a *de facto* government agent when she unlocked his cellphone and showed the images of child pornography that it contained to the police officer. Moreover, because her search of his cellphone did not implicate the Fourth Amendment, the district court correctly determined that the use of evidence derived from that search in a subsequent search warrant application does not

2

provide a basis to suppress evidence obtained from devices searched pursuant to that warrant.

Accordingly, we **AFFIRM** the judgment of the district court.

## BACKGROUND[1]

On or about February 1, 2017, Robert Wessels Jr., a police officer in the Hoosick Falls Police Department, was summoned to the police station by the 911 center in response to the request of an individual, K.S., who wanted to make a complaint. When he entered the police station, Officer Wessels was directed to a room where he met with K.S. K.S. had a cellphone in her hand and, while swiping through various images on the phone, she indicated to Officer Wessels that he needed to see what was on it. At an evidentiary hearing, Officer Wessels testified that he did not ask K.S., at any point in time, to unlock the phone and that he did not see her unlock the phone before she showed him the images on that phone.[2]

---

[1] The following facts are drawn from the testimony given at the suppression hearing and documents that were part of the record in connection with Hines's suppression motion.

[2] As discussed *infra*, in his sworn supporting deposition dated February 1, 2017, which was attached to a search warrant application, Officer Wessels stated that K.S. unlocked the cellphone in his presence, without any instruction from him. *See* App'x at 42 ("Upon contact, [K.S.] stated that she found several images on her boyfriend's cell phone of what appeared to be young naked girls posing. [K.S.] then unlocked the cell phone without any instruction from me . . . ."). However, at the evidentiary hearing, Officer Wessels indicated that his statement in the supporting deposition was incorrect to the extent that

As K.S. scrolled though the images that she wished him to see, Officer Wessels observed approximately 3–5 images of naked young girls who were posing in various sexual positions and who, in Officer Wessels's opinion, all appeared to be under 15 years old.  During the meeting, K.S. advised Officer Wessels that the phone belonged to her boyfriend.  Officer Wessels then took the phone into custody as evidence.

Shortly thereafter, Hoosick Falls Police Officer Justin Ashe and New York State Police Investigator Thomas Judge arrived at the station to assist in the investigation.  K.S. was then interviewed and signed a sworn statement, as well as forms consenting to a search of the apartment she shared with Hines.  In her sworn statement she identified "William R. Hines" as her boyfriend and declared, *inter alia*, the following:

> This morning while at my residence . . . I noticed my boyfriend['s] cell phone was left behind while he was at work. . . .  We have been living together for about a year and have known each other for about a year also.  Sometimes William will leave behind his cell phone when he leaves the house and will freak out when he returns home looking for his phone.  A couple of times I have tried to get into William[']s cell phone to erase pictures of us together with no clothes on in which I consented to have taken of me, but I no longer wished for William to have them.  I have asked William to erase those pictures but he told me they were his pictures.  The last few times I tried to look at

it indicated that K.S. unlocked the cellphone in his presence; rather, he explained "[t]he phone was already unlocked when she came in[to]" the police station. *Id*. at 81.

4

William's phone he had changed his passcode and I wasn't able to unlock his phone. This morning when I saw William[']s phone sitting on the kitchen counter by the refrigerator I tried the last pass code I knew and was able to unlock William[]'s cell phone. I looked into the gallery of William[']s pictures[, and] I saw about ten pictures of very young girls between the ages of 6 through ten years of age with no clothes on. [K.S. then described certain sexually explicit photos.] I was totally freaked out when I saw these pictures and drove right to the Village of Hoosick Falls Police Department. I looked very quickly at those photographs and I didn't recognize anyone in the pictures. I am completely in shock over what I observed on William's phone. At no time besides today did I ever view or observe William view naked kids on [his] phone. I have known William to look at adult pornography but what I saw on his phone today is wrong and he belongs in jail. We were on our way out as a couple but I never would make anything up like this.

App'x at 44.

After giving her statement, K.S. met the officers at the apartment so that, with her consent, they could conduct a search of the premises. During the search, she allowed the officers to seize additional electronic devices that she said belonged to Hines, which included a laptop and two additional cellphones located in the dining room. The officers subsequently located Hines at his workplace and arrested him.

The following day, February 2, 2017, Officer Ashe applied for a search warrant for the cellphone K.S. had provided at the police station, as well as the other electronic devices seized from the apartment. The search warrant

5

application included, among other things, K.S.'s sworn statement and Officer Wessels's supporting deposition regarding his interaction with K.S. at the police station. Based on this application, a Rensselaer County Court Judge issued a search warrant that same day authorizing the search of the phone that K.S. brought to the Hoosick Falls police station, as well as the other electronic devices seized from the apartment, including the laptop. A forensic examination of the phone supplied to the police by K.S. revealed over one hundred images of child pornography, and a similar examination of the laptop revealed hundreds of images of child pornography, some of which were duplicates of those contained on the phone.

Hines was initially charged in the Hoosick Falls Village Court with promoting and possessing a sexual performance by a child. Ultimately, the state did not pursue those charges. In January 2020, Hines was charged in a federal criminal complaint in the Northern District of New York for the same alleged conduct at issue in the state proceeding and was subsequently detained on those charges. On July 23, 2020, a federal grand jury indicted Hines on one count of receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A), (b)(1) ("Count One"); and two counts of possession of child pornography, in violation of

6

18 U.S.C. §§ 2252A(a)(5)(B), (b)(2), based on child pornography found on his cellular phone ("Count Two"), and on his laptop computer ("Count Three").

On October 15, 2021, Hines moved to suppress the evidence obtained from "the seizure of [his] cellular telephone, and any fruits derived therefrom," or, in the alternative, "an evidentiary hearing to further develop the factual record." Dist. Ct. Dkt. No. 43 (Notice of Motion). He asserted that suppression was warranted because (1) K.S. was acting as an agent of the police when she showed the photos on his phone to Officer Wessels, and therefore, her actions constituted an unconstitutional warrantless search in violation of the Fourth Amendment, *see* Dist. Ct. Dkt. No. 43-4, at 6–7, and (2) that evidence was then used to provide the probable cause necessary to obtain a search warrant, and thus, "[a]ll evidence subsequently discovered in this case was a fruit of the original search of [his] cellphone in the Hoosick Falls Police Department," *id.* at 4. After the government filed its opposition, the district court ordered an evidentiary hearing on the suppression motion. The hearing took place on April 13, 2022, and Officer Wessels was the sole witness called to testify at the hearing.

On June 14, 2022, the district court issued a Decision and Order denying the suppression motion in its entirety. Based on the testimony elicited at the

7

suppression hearing and the evidence in the record, the district court determined that "the evidence is clear that [K.S.] searched the defendant's cell phone of her own volition while at the residence she shared with the defendant and, in doing so, discovered what appeared to be illicit images involving young girls." App'x at 109. The district court also found that, at the police station, "[K.S.] unlocked the cell phone of her own volition and, without any prompting, began to show Officer Wessels the images on the phone." *Id.* at 109–10. In addition, the district court "credit[ed] Officer Wessels's testimony" that (1) "once he saw approximately five seemingly illicit images while [K.S.] quickly swiped or scrolled through the phone, Officer Wessels told [K.S.] to stop swiping/scrolling through the phone because he realized it was then going to be a piece of evidence," and (2) "he did not stop [K.S.] from scrolling through the phone sooner because she was doing it so rapidly, and that Officer Wessels then almost immediately secured the phone and placed it into evidence." *Id.* at 110 (internal quotation marks omitted). In light of these factual findings, the district court concluded that "there is not a sufficiently close nexus between [K.S.'s] actions and the police such that [she] may be fairly treated as a police agent," and thus, "[u]nder the circumstances, no Fourth Amendment violation occurred by [K.S.'s] actions of privately searching the cell phone and then

8

independently displaying its seemingly illicit content for the police."  *Id.* at 110–11.  In sum, the district court determined that K.S.'s search of Hines's phone did not trigger Fourth Amendment protections, and that the officers' use of the evidence obtained from K.S.'s search to subsequently obtain a search warrant for the phone and other electronic devices was proper.  Finally, the district court held, in the alternative, that the good faith exception to the exclusionary rule supported the denial of the suppression motion.

On January 13, 2023, Hines pleaded guilty to all three counts in the indictment pursuant to a conditional plea agreement with the government.[3]  In the plea agreement, Hines reserved the right to have an appellate court review the following issue raised in his suppression motion:  "Whether on or about February 1, 2017, K.S. acted as an agent of the police when she used the defendant's password to open his [cellp]hone, saw child pornography images on it, and then showed those images to a Hoosick Falls Police Officer."  *Id.* at 126.  The plea

---

[3]  Judge Thomas J. McAvoy, to whom the case was initially assigned, ordered and presided over the suppression hearing, and issued the decision and order that are the subject of this appeal.  After the decision issued, the case was reassigned to Judge Mae A. D'Agostino.  Judge D'Agostino oversaw entry of the guilty plea, sentenced Hines, and entered the judgment appealed from.

agreement further provided that, "[i]f the defendant prevails on that appeal, the defendant will be permitted to withdraw the guilty plea without penalty." *Id*.

On August 18, 2023, the district court sentenced Hines principally to 144 months' imprisonment. This appeal followed.

**DISCUSSION**

"When reviewing a district court's denial of a motion to suppress, we review findings of fact for clear error and legal findings *de novo*." *United States v. Lajeunesse*, 85 F.4th 679, 685 (2d Cir. 2023). "In reviewing the denial of such a motion, we view the evidence in the light most favorable to the government, and we give special deference to findings that are based on determinations of witness credibility." *United States v. Delva*, 858 F.3d 135, 148 (2d Cir. 2017) (alteration adopted) (internal quotation marks and citations omitted).

"Fourth Amendment principles governing searches and seizures apply only to 'governmental action' and are thus 'wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" *United States v. DiTomasso*, 932 F.3d 58, 67 (2d Cir. 2019) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)); *see also Walter v. United States*, 447 U.S.

10

649, 656 (1980) ("It has, of course, been settled . . . that a wrongful search or seizure conducted by a private party does not violate the Fourth Amendment and that such private wrongdoing does not deprive the government of the right to use evidence that it has acquired lawfully."). "A search conducted by private individuals at the instigation of a government officer or authority may sometimes be attributable to the government for purposes of the Fourth Amendment, but private actions are generally attributable to the government only where there is a sufficiently close nexus between the State and the challenged action of the . . . [private] entity so that the action of the latter may be fairly treated as that of the State itself." *DiTomasso*, 932 F.3d at 67–68 (internal quotation marks and citations omitted); *see also Skinner v. Ry. Lab. Execs. Ass'n*, 489 U.S. 602, 614 (1989) ("Whether a private party should be deemed an agent or instrument of the Government for Fourth Amendment purposes necessarily turns on the degree of the Government's participation in the private party's activities.").

We have emphasized that "[t]he close nexus test is not satisfied when the state merely approves of or acquiesces in the initiatives of the private entity." *United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (alterations adopted) (internal quotation marks and citation omitted). Instead, a close nexus is generally found

11

"[w]hen the state exercises coercive power, is entwined in the management or control of the private actor, or provides the private actor with significant encouragement, either overt or covert." *Id*. at 147 (internal quotation marks, citation, and emphases omitted).

Here, Hines argues that the district court erred in determining that (1) K.S. did not act as an agent of the police when she unlocked his cellphone and showed images of child pornography on the phone to Officer Wessels and thus, the private search did not implicate the Fourth Amendment; and (2) the subsequent search warrant was not tainted by the warrant application's reliance on the images seen by Officer Wessels on Hines's cellphone. We find these arguments unpersuasive.

As a threshold matter, to the extent that Hines suggests that the government has the burden to show a lack of governmental action to avoid implicating the Fourth Amendment, we disagree. It is axiomatic that "[t]he party moving to suppress bears the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991); *see also United States v. Lewis*, 62 F.4th 733, 741 (2d Cir. 2023) ("As the proponent of the motion to suppress, it was [the defendant's] burden to establish that the search violated his Fourth Amendment rights."). That burden

includes satisfying the threshold requirement that the search at issue constituted a governmental action, such that the search implicated the defendant's rights under Fourth Amendment. Thus, here, the district court correctly ruled that "[Hines] bore the burden of demonstrating that [K.S.] acted as a de facto agent of the government." App'x at 111.

To be sure, as Hines notes, "[i]t is true that searches and seizures conducted without warrants are presumptively unreasonable" and, thus, "the presumption may cast upon the [government] the duty of producing evidence of consent or search incident to an arrest or other exceptions to the warrant requirement" to justify its search. *Ruggiero v. Krzeminski*, 928 F.2d 558, 563 (2d Cir. 1991); *accord United States v. Maher*, 120 F.4th 297, 316 n.18 (2d Cir. 2024); *United States v. Arboleda*, 633 F.2d 985, 989 (2d Cir. 1980). However, such a presumption of unreasonableness is triggered only if the Fourth Amendment applies. The presumption therefore cannot relieve the defendant of his burden of demonstrating that the private search at issue has a sufficiently close nexus to the government to implicate the Fourth Amendment in the first place.[4]

---

[4] We note that this threshold question of whether there was any governmental action that implicated the Fourth Amendment is not to be confused with the "private search doctrine." That doctrine applies only when the Fourth Amendment is already in play— *i.e.*, when there is a "*governmental search* [that] follows on the heels of a private one."

Our holding that the defendant bears the burden of demonstrating that the private party conducting the search was acting as an instrument or agent of the government is consistent with the conclusion reached by every other circuit to address this issue. *See, e.g.*, *United States v. Kramer*, 75 F.4th 339, 343 (3d Cir. 2023) ("The defendant bears the burden of proving that a private party was acting as an instrument of the government for purposes of the Fourth Amendment."); *United States v. Rosenow*, 50 F.4th 715, 729 (9th Cir. 2022) ("A defendant challenging a search conducted by a private party bears the burden of showing the search was governmental action." (internal quotations marks and citation omitted)); *accord United States v. Meals*, 21 F.4th 903, 906–07 (5th Cir. 2021); *United States v. Ellyson*, 326 F.3d 522, 527 (4th Cir. 2003); *United States v. Shahid*, 117 F.3d 322, 325 (7th Cir. 1997).

---

*Jacobsen*, 466 U.S. at 115 (emphasis added). "The private search doctrine instructs that where a private party has already searched property belonging to another person, government authorities may repeat that search without a warrant so long as they do not exceed the scope of the private search." *Maher*, 120 F.4th at 306 (internal quotation marks and citation omitted). The private search doctrine is not implicated here because there was no relevant governmental search. As discussed *infra*, it was K.S. who searched through Hines's phone both at her residence and at the police station. Officer Wessels's visual observation of the photos K.S. was showing him did not amount to a "search" within the meaning of the Fourth Amendment. *See, e.g.*, *United States v. Jones*, 565 U.S. 400, 412 (2012) (The Supreme Court has never "deviated from the understanding that mere visual observation does not constitute a search."); *Kyllo v. United States*, 533 U.S. 27, 32 (2001) ("[W]e have held that visual observation is no 'search' at all.").

Applying our holding here, we discern no error in the district court's determination that Hines failed to meet his burden to demonstrate that K.S.'s search was fairly attributable to the government. After conducting an evidentiary hearing, the district court first found that "[K.S.] searched the defendant's cell phone of her own volition while at the residence she shared with the defendant and, in doing so, discovered what appeared to be illicit images involving young girls," and "[t]his was done without police involvement or prior knowledge." App'x at 109. The district court further found that, at the police station, "[K.S.] unlocked the cell phone of her own volition and, without any prompting, began to show Officer Wessels the images on the phone." *Id*. at 109–10. Moreover, the district court determined that (1) "once [Officer Wessels] saw approximately five seemingly illicit images while [K.S.] quickly swiped or scrolled through the phone, [he] told [K.S.] to stop swiping/scrolling through the phone because he realized it was then going to be a piece of evidence"; and (2) "he did not stop [K.S.] from scrolling through the phone sooner because she was doing it so rapidly, and that [he] then almost immediately secured the phone and placed it into evidence." *Id.* at 110. Those determinations were supported by Officer Wessels's testimony, which the district court credited. *United States v. Iodice*, 525 F.3d 179, 185 (2d Cir.

15

2008) (emphasizing, in connection with review of factual findings at a suppression hearing, that "[w]hen . . . credibility determinations are at issue, we give particularly strong deference to a district court finding"). Based upon those factual findings and credibility determinations, the district court properly concluded that Hines had failed to demonstrate a sufficiently close nexus between the conduct of Officer Wessels and that of K.S., such that her independent search of the phone could be attributed to the police.

Hines principally argues on appeal that the district court "erred by failing to reject Officer Wessels'[s] statements (both his testimony and his supporting deposition) in their entirety" because he testified at the hearing that K.S. had already unlocked the phone some time prior to showing him the images of child pornography, even though in his supporting deposition he stated that she had unlocked the phone in his presence at the police station. Appellant's Br. at 13; *see also* Appellant's Reply Br. at 2–3 ("It was clear error for the district court to partially credit Officer Wessels's statements despite his admission under oath that his supporting deposition was not true."). In suggesting that the district court was required to reject all of Officer Wessels's testimony based upon this apparent

16

contradiction, Hines relies on the maxim *falsus in uno, falsus in omnibus* (*i.e.*, false in one thing, false in all).

We find Hines's argument unpersuasive. First, that maxim is based on the concept that "[w]hen it is once ascertained that a witness is capable of committing *perjury*, all he swears to is rejected as false." *United States v. Castillero*, 67 U.S. 17, 128 (1862) (emphasis in original omitted; emphasis added). Here, the inconsistency between Officer Wessels's testimony and his sworn statement in his supporting deposition is not necessarily perjury. Hines offers no basis to conclude, for instance, that the inconsistency was intentional rather than accidental. *See United States v. Bortnovsky*, 879 F.2d 30, 33 (2d Cir. 1989) ("[E]ven if [the] testimony had conflicted directly with that given previously, the difference alone would not constitute perjury."). Hines's urging that the court was obligated to reject the entirety of Officer Wessels's testimony is therefore unavailing. Second, we have questioned the usefulness of this maxim, noting that "[t]he maxim 'Falsus in uno, falsus in omnibus' has been well said to be itself absolutely false as a maxim of life." *United States v. Weinstein*, 452 F.2d 704, 713 (2d Cir. 1971) (internal quotation marks and citation omitted). We have never suggested that a factfinder—whether a jury or a judge—is *required* to reject a witness's entire testimony if such testimony

17

is inconsistent with a prior sworn statement. *See United States v. Martinez*, 110 F.4th 160, 173 (2d Cir. 2024) ("[T]he maxim *falsus in uno*, *falsus in omnibus* is permissive and not mandatory." (internal quotation marks and citation omitted)); *see also United States v. Jackson*, 778 F.2d 933, 942 (2d Cir. 1985) ("[J]urors are not required to reject or accept any particular witness's testimony *in toto*."). Instead, it is the province of the district court at a suppression hearing to assess a witness's credibility, including his or her demeanor, in determining whether to accept all, some, or none of that testimony in light of any inconsistencies in the witness's recitation of the facts. *See United States v. Maldonado-Rivera*, 922 F.2d 934, 972 (2d Cir. 1990) ("Assessments of the credibility of witnesses are the province of the district court and we are not entitled to overturn those assessments.").

Here, the district court explicitly considered the inconsistency that Hines identified in Officer Wessels's testimony and concluded that it was immaterial and did not warrant disregarding the Officer's testimony that K.S. unlocked the phone to show him the images on her own. *See* App'x at 109–10 ("Although Officer Wessels's hearing testimony is contradictory to his [s]upporting [d]eposition as to whether [K.S.] unlocked the cell phone in Officer Wessels's presence, there is no contradiction that [K.S.] unlocked the cell phone of her own volition and, without

18

any prompting, began to show Officer Wessels the images on the phone."). On this record, contrary to Hines's argument otherwise, there is no basis to disturb the district court's factual finding on this critical issue based upon its assessment of Officer Wessels's credibility and the entire record. *See Iodice*, 525 F.3d at 186 (holding no clear error in crediting an officer's testimony at suppression hearing, despite purported inconsistences between details in search warrant affidavit and hearing testimony, because "seemingly inconsistent testimony need not render a witness not credible"); *see also United States v. Bradshaw*, 102 F. 3d 204, 210 (6th Cir. 1996) ("Because the District Court was in the best position to judge credibility, and because that Court plausibly resolved the discrepancies in the testimony [of the police officers at the suppression hearing], its findings of fact should not be disturbed.").

In sum, we conclude that the district court did not clearly err in any of its factual findings and correctly determined, based upon those findings, that K.S.'s private search of Hines's cellphone did not violate the Fourth Amendment and that no taint thereby resulted from the use of the evidence obtained from that

private search in the subsequent search warrant application. Therefore, the district court properly denied the suppression motion in its entirety.[5]

## CONCLUSION

We have considered the remainder of Hines's arguments and find them to be without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

---

[5] Because we affirm the district court's decision on this ground, we need not address the district court's alternative holding that the search was justified under the good faith exception to the exclusionary rule.