23-7563
*United States v. Ilori*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of March, two thousand twenty-six.

PRESENT:
> BETH ROBINSON,
> SARAH A. L. MERRIAM,
> *Circuit Judges.*[*]

_____

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                                            No. 23-7563

ADEDAYO ILORI,

> *Defendant-Appellant,*

CHRIS RECAMIER,

> *Defendant.*

_____

_____

[*] Circuit Judge Alison J. Nathan, originally a member of the panel, was temporarily unavailable to hear this matter. The appeal is being decided by the remaining members of the panel, who are in agreement. *See* 2d Cir. IOP E(b).

FOR APPELLANT:                                ROBERT A. CULP, Law Office of Robert
                                              A. Culp, Garrison, NY.

FOR APPELLEE:                                 DAVID R. FELTON (Juliana N. Murray,
                                              Daniel G. Nessim, Jacob R. Fiddelman,
                                              Assistant United States Attorneys, *on the
                                              brief*), *for* Jay Clayton, United States
                                              Attorney for the Southern District of
                                              New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Vyskocil, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on October 24, 2023, is **VACATED**, and this matter is **REMANDED** for further proceedings consistent with this decision.

## I.      BACKGROUND

Appellant Adedayo Ilori was charged in a six-count Superseding Indictment with fraud and money laundering charges arising out of an alleged scheme relating to loans administered by the United States Small Business Administration ("SBA"). The government alleged that in 2020 and 2021, Ilori and his co-defendant, Chris Recamier, "used the identities of dozens of individuals to submit online applications for a total of over $10 million dollars in government-guaranteed loans for at least four companies through the SBA's" loan programs. Pre-Sentence Report ("PSR") at ¶19. Through the fraudulent loan applications, Ilori and Recamier received over one million dollars in loans. *See* PSR at ¶21.

Recamier pled guilty. Ilori proceeded to trial; he was convicted on all counts.

2

## II. DISCUSSION

Ilori appeals the judgment of conviction, contending that (1) the motion to suppress was wrongly denied, (2) the District Court erroneously admitted video recordings of Ilori without a proper foundation, and (3) the District Court violated his Fifth and Sixth Amendment rights by conducting certain proceedings outside of his presence. Ilori also appeals the sentence imposed as substantively and procedurally unreasonable, and seeks remand to a different judge. We address each issue in turn.

### A. Motion to Suppress

Before trial, Ilori filed a motion to suppress evidence seized during a search of a vehicle he was occupying. *See* App'x at 24-29. The District Court found that Ilori lacked standing to challenge the search and that in any event, the automobile exception applied to the search. *See* Spec. App'x at 1-13.

"When reviewing a district court's denial of a motion to suppress, we review findings of fact for clear error and legal findings *de novo*." *United States v. Hines*, 140 F.4th 105, 111 (2d Cir. 2025) (citation modified). Whether a defendant has a protected Fourth Amendment interest sufficient to permit him to bring a motion to suppress evidence is a question of law that we review *de novo*. *See United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991). Ilori concedes that under our precedent, because he did not have a valid driver's license, he "lacked a reasonable expectation of privacy" in a fraudulently leased vehicle of which he "did not have *lawful* possession or control," and therefore he "does not have standing to challenge the search." *United States v. Lyle*, 919 F.3d 716, 730 (2d Cir. 2019); *see* Ilori Br. at 59. On *de novo* review, we agree that this

issue is controlled by *Lyle*, and we affirm the District Court's denial of the motion to suppress.

## B. Admission of Video Recordings

Ilori contends that the District Court erred in admitting video recordings depicting him at a coffee shop through the shop's manager, arguing that the manager "claimed no expertise" and "did no more than describe how he conducted his searches and that the videos were the results." Ilori Br. at 42. Ilori contends that because the manager could not confirm that the "time stamps" on the videos were accurate, his testimony was insufficient to authenticate the videos, and they should have been excluded.

We review the District Court's decision to admit the videos for abuse of discretion. *See United States v. Hendricks*, 921 F.3d 320, 326 (2d Cir. 2019). "A district court has considerable discretion in deciding whether an adequate foundation has been laid for the introduction of relevant" evidence and we "accord[] particular deference to the trial court's rulings as to foundation and relevance." *Id.* (citation modified). The shop manager testified that the time stamps on the video surveillance footage aligned with financial records indicating the dates and times of transactions depicted in the video. We find no abuse of discretion in the District Court's decision to admit this evidence. Ilori was free to argue that the jury should discount the evidence – which, indeed, his counsel did – but the decision to admit it was not error.

## C. Conduct of Proceedings Outside of Ilori's Presence and Potential Conflict of Ilori's Trial Counsel

We turn now to the most significant arguments raised by Ilori.[1] Ilori contends that (1) his counsel was conflicted, thus depriving him of the benefit of counsel as guaranteed by the Sixth Amendment, and that (2) the District Court conducted certain proceedings relevant to the trial with that conflicted counsel, and outside Ilori's presence, in violation of his "due process right to be present . . . at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (citation modified).

On October 28, 2022, the fourth day of trial, the District Court advised all parties that she had become aware that there had been media coverage of the trial, and that an article "reference[d] the fact that we have Marshals here." App'x at 163. The District Court indicated that it would remind the jurors, in light of the coverage, not to read or research anything about the case. Ilori then informed the Judge that he wanted new counsel to be appointed. In response, the District Court conducted a brief *ex parte* hearing with Ilori and his defense counsel, Peter Brill, in the robing room. See App'x at 166-68. During that proceeding, Ilori asserted that he did "not have confidence in Mr. Brill's counsel any longer," App'x at 170, and identified a number of concerns he had with Mr. Brill's representation, *see* App'x at 171-76. The District Court denied Ilori's request for new counsel, indicating that he could continue to be represented by Mr. Brill

---

[1] We note that the government contends we should review these issues for plain error, because Ilori did not object at trial. But Ilori had no way to know that the events now challenged had occurred, *because he was excluded from the proceedings* at which his own counsel argued against his interests. He therefore had no "meaningful opportunity to object," and plain error review does not apply. *United States v. McAdam*, 165 F.4th 688, 696 (2d Cir. 2026).

or he could represent himself. *See* App'x at 174.

Following the *ex parte* hearing, Brill approached the bench while Ilori was still in a "holding cell," App'x at 180, and advised the District Court (and counsel for the government): "Mr. Ilori, unhappily, has determined that he wants to move forward with counsel – me, that is." App'x at 179. Brill then proceeded to have the following exchange with the District Court:

> MR. BRILL: . . . [B]ased upon the Court's own observations and mine and the government's, the delay to the July trial, from my opinion, as I previously told the Court, I believe was unwarranted because I believe I was fully prepared to move forward at that time, as I said to the Court at that time. This is not based upon any privileged conversation, but my belief is that this may -- this situation may be a delaying tactic.
>
> THE COURT: That's painfully obvious.
>
> MR. BRILL: Yes. I have expressed to the Marshals my concern that the additional delay tactics are fairly limited, and I don't know if I am fantasizing here, but could include hauling off and punching me in the head in the middle of the trial, because obviously that would lead to a delay. So I don't particularly have a physical fear of Mr. Ilori, but given that his options may be limited—and I'm sorry to have to say this at all — if he feels that he really wants this trial not to move forward with me as his attorney, given his limited options, he might try something more dramatic. I have no basis in fact to say that this actually will happen, but in narrowing down the possibilities, if delay is his tactic, then there aren't that many left. I don't want to prejudice Mr. Ilori in front of the jury by noticeably increasing security or handcuffing him or something like that. I don't even know if moving him a chair over would be obvious to the jury and prejudicial. And we obviously want to protect the record and make sure that this trial is fair to Mr. Ilori. But in good conscience, as I was thinking about it and given, again, not based upon any privileged conversation but just on my observation of his emotional state, I don't know if it's a realistic concern or not, your Honor, but I just want to raise it with the Court.

App'x at 179-80. The District Court stated: "I'm not going to say much, but I will observe for the record that it is absolutely my view that this is a tactic by Mr. Ilori,

completely unfounded and strategic on his part, and he is, to my observation, somewhat manipulative. So I understand your concern, Mr. Brill." App'x at 181. The District Court proceeded to discuss with the Deputy U.S. Marshal adding additional Courtroom Security Officers ("CSOs") to the courtroom; Brill suggested that they should, as a "minimum step . . . put a chair in between" Ilori and himself at counsel table, and the Deputy agreed to do so. App'x at 181.

The District Court then mentioned – again, without Ilori present – that a juror had made an inquiry about security: "But I did mention to you yesterday -- I mentioned earlier this morning, actually; just seems like yesterday -- that one of the jurors did inquire who were the people in the suits sitting behind Mr. Ilori, and [the courtroom deputy] just said they're part of the team and left it at that." App'x at 183. It does not appear that the District Court inquired any further of any juror about this issue, and the record does not reflect that Ilori was made aware of the inquiry, or the District Court's comments about it.

"A defendant in a criminal case has the right to be present at 'every trial stage.'" *United States v. Collins*, 665 F.3d 454, 459 (2d Cir. 2012) (quoting Fed. R. Crim. P. 43(a)(2)). "The right to be present has been extended to require that messages from a jury should be disclosed to counsel and that counsel should be afforded an opportunity to be heard before the trial judge responds." *Collins*, 665 F.3d at 459. A defendant also has a "Sixth Amendment right to the effective assistance of counsel," which "includes the right to be represented by an attorney who is free from conflicts of interest." *United States v. Blount*, 291 F.3d 201, 210 (2d Cir. 2002).

7

Brill had at least a potential conflict of interest, and quite possibly an actual conflict of interest, with Ilori. *See United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004) ("An actual conflict of interest exists when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action . . . . An attorney has a potential conflict of interest if the interests of the defendant could place the attorney under inconsistent duties in the future." (citation modified)). Brill told the District Court and government counsel, outside of Ilori's hearing, that he believed Ilori was engaging in delay tactics. He told the District Court and government counsel that he believed Ilori might try to assault him. Vacatur where counsel has a potential conflict is not automatic. Rather, "to overturn his conviction on the basis of his attorney's conflict of interest resulting in ineffective assistance of counsel, [a defendant] must at the very least show some possibility of prejudice he suffered by reason of the conflict." *United States v. Matera*, 489 F.3d 115, 125 (2d Cir. 2007). Here, Ilori has established that his own appointed counsel asserted – though counsel admitted to having "no basis" for it – that Ilori might assault him; as a result of this assertion, security measures were increased at his counsel's own request, during trial, in a way that might well have been noticed by the jury; at least one juror had already inquired about security measures at trial; and media reports had already mentioned the security measures being taken during the trial. In sum, the record reflects that Brill "altered his conduct of the trial in response" to his view of Ilori and the possibility that Ilori might assault him. *LoCascio v. United States*, 395 F.3d 51, 55 (2d Cir. 2005). And in light of the fuller context, including the juror inquiry, we cannot conclude that the change in security

8

measures did not affect the fairness of the trial.

Had Ilori been aware of the security issues raised by Brill, and of the juror inquiry, and of the other matters discussed outside of his presence, he might have been able to address them. He would at least have had the ability to be heard. But the record reflects that Ilori was not aware of any of these issues during the trial. Given the circumstances, we cannot "say with fair assurance that the judgment was not substantially swayed by the error" committed in excluding Ilori from these proceedings. *Collins*, 665 F.3d at 461 (citation modified).

We conclude that, in this unusual case, the confluence of Brill's potential conflict – which the record reflects resulted in counsel altering his conduct during the trial in a way that may well have been apparent to the jury – and the fact that Ilori was excluded from all discussion of these issues, requires vacatur of the conviction.

### D.     Remand to a Different Judge

Ilori contends that "[t]his case is the rare one where a remand to a different judge is appropriate. The court's handling of the jury note and defense counsel's bizarre claim to be in physical fear of appellant creates an appearance of unfairness." Ilori Br. at 57. In evaluating a request for remand to a new judge, we bear in mind that such requests are to be granted only "where we are persuaded that the original judge would have substantial difficulty in putting out of her mind her previously expressed views, or where reassignment is advisable to preserve the appearance of justice." *United States v. Awadallah*, 436 F.3d 125, 135 (2d Cir. 2006) (citation modified). We do not find such circumstances presented here. Although the District Court erred, the errors do not

9

present the sort of "special circumstances" required for reassignment. *Id.* (citation modified).

### E.    Reasonableness of Sentence

Because we conclude that the judgment of conviction must be vacated, we do not reach Ilori's sentencing arguments.

* * *

For the reasons set forth herein, the judgment of the District Court is **VACATED** and this matter is **REMANDED** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court